Nick **GILLILAND**, Plaintiff,

v.

**MOTOROLA, INC.** and Next Level Communications, Inc., Defendants.

C.A. No. 411–N.

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 20, 2005.

Decided: March 4, 2005.

---

Kenneth J. Nachbar, Megan Ward Cascio, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Stephen M. Sacks, Arnold & Porter, L.L.P., Washington, DC, for the Defendants.

### OPINION AND ORDER

LAMB, Vice Chancellor.

### I.

In an earlier opinion, this court found that a majority stockholder breached its fiduciary duty by making incomplete disclosures in a notice of short-form merger sent in connection with the second step of a two-step going-private transaction. That opinion left unresolved what relief might be available to remedy this misconduct. The plaintiff, a former stockholder, now moves for an order determining that the proper form of relief is a class-based "quasi-appraisal" on behalf of all stockholders whose shares were exchanged for cash in the freeze-out merger.

As discussed below, the court concludes that a more limited form of "quasi-appraisal" is the appropriate remedy for this case. The court also decides that class certification must await further developments.

### II.

#### A. *Background*

In January 2003, Motorola, Inc. launched a tender offer for the 26% of Next Level Communications, Inc. that it did not own, offering $1.04 per share. After Next Level sued unsuccessfully to enjoin Motorola's offer, Motorola raised its offer to $1.18 per share. By the expiration of the tender offer period in April 2003, Motorola had acquired approximately 88% of Next Level. Motorola then converted a portion of its Next Level preferred stock

Ronald A. Brown, Jr., Prickett, Jones & Elliott, P.A., Wilmington, DE, for the Plaintiff.

into common stock to increase its common stock ownership to more than 90% and then cashed-out the Next Level minority stockholders pursuant to 8 *Del. C.* § 253, Delaware's short-form merger statute.

One year later, Nick Gilliland, sued Motorola and Next Level for breach of the fiduciary duty of disclosure,[1] arguing that the notice sent in conjunction with the short-form merger did not meet the disclosure requirements under Delaware appraisal law. Although the notice met the express statutory requirements, this court concluded, on summary judgment, that the defendants breached their fiduciary duty of disclosure by not providing *any* disclosure relating to Next Level's financial condition to the stockholders faced with the decision of whether to take the cash or demand appraisal.[2]

Notably, the summary judgment opinion found a breach despite the dissemination of Next Level financial information in connection with the first-step tender offer.[3] That disclosure was itself the subject of scrutiny in injunction actions filed by Next Level and representative plaintiffs in 2003. In denying the preliminary injunction, this court concluded that Motorola's disclosure documents were neither incomplete nor misleading.[4] The summary judgment opinion acknowledges that, as a result of that extensive disclosure, many, if not most, Next Level stockholders "had no practical need for even the summary information" required by the law. In light of this observation, the court explained its finding of a violation of duty in the following terms:

> Nevertheless, it is equally likely that there were other stockholders, neither so well-informed nor so well-equipped, who needed both summary financial and trading information and references to other sources of publicly available data from which complete information could be obtained. Their interests demand protection and support a finding, even in the context of the most fully disclosed "total mix" of information, that a notice given pursuant to section 262 must contain, at a minimum, summary financial and trading data and reference to the publicly available sources from which more complete information is available.[5]

### B. *The Dispute*

The plaintiff now seeks a class-wide "quasi-appraisal" remedy for the minority stockholders eliminated in the short-form merger.[6] He argues that all of those stockholders are entitled to receive the difference between the merger price already paid to them and a court-determined fair value of Next Level shares, notwithstanding the fact that many, if not most, of them made an informed choice to forego their appraisal remedy in 2003. The plain-

---

**1.** *Gilliland v. Motorola, Inc.,* 859 A.2d 80 (Del.Ch.2004).

**2.** *Id.* at 88 ("[T]he court is unwilling to conclude that the impetus to streamline the short-form merger procedure can ever justify a complete absence of financial disclosures in a notice of merger issued pursuant to section 262.").

**3.** Motorola filed a Schedule TO with the Securities and Exchange Commission ("SEC") and delivered its Offer to Purchase to Next Level stockholders. Additionally, Next Level made public disclosure about the merger by filing a Schedule 14D–9 Solicitation and Recommendation Statement with the SEC and sending it to stockholders.

**4.** *Next Level Communications, Inc. v. Motorola, Inc.,* 834 A.2d 828 (Del.Ch.2003).

**5.** *Gilliland,* 859 A.2d at 88.

**6.** In the earlier opinion, this court specifically reserved judgment on "what form of relief is best suited to address the defect in the Notice." *Id.* at 89 n. 29.

tiff contends that this remedy is consistent with Delaware law because this court should act to deprive a controlling stockholder (Motorola) that breached its fiduciary duty of any windfall resulting from that breach. He argues against a simple "redo" remedy designed to afford minority stockholders a second chance to elect appraisal based on 8 Del. C. § 262 because that remedy would not discourage controlling stockholders from behaving as Motorola did here.

The defendants respond that making a class-wide quasi-appraisal remedy available to every Next Level stockholder whose shares were cashed out in the section 253 merger could substantially penalize Motorola and create its own windfall. They point out that a simple "quasi-appraisal" remedy greatly distorts the risk/reward profile of a statutory appraisal action, creating a form of risk-free upside to the putative class. For example, in a true appraisal, all stockholders demanding the remedy are required to retain their shares and risk the possibility of getting less than the merger price. By contrast, the plaintiff proposes that he and all members of the proposed class be allowed to retain the cash already paid for their shares without risk of repayment while pursuing a higher valuation.

The defendants propose a modified form of "quasi-appraisal" that, they say, more fairly mimics the dynamics of the appraisal remedy that was available by statutory right. This proposed remedy has several parts to it. First, the defendants suggest that the minority stockholders be required to opt-in to the quasi-appraisal class by making a demand for appraisal. As part of the opt-in process, the minority stockholders would be required to return a portion (the defendants suggest $.28 per share) of the $1.18 per share paid in the merger. This money would be paid into the Register in Chancery during the pendency of the proceeding. Second, the defendants agree not to argue that the fair value of the shares was less than $.90, the amount retained by those class members electing to pursue this remedy. Third, the court would appraise the shares and, depending on the appraisal, award money to either the class or the defendants, or possibly both. If the court appraises the shares at more than $1.18 per share, the minority stockholders would be entitled to all of the escrowed monies, as well as an additional amount the court awards. If the court appraises the shares between $.90 and $1.18, the class and the defendants would split ratably the escrowed monies. And, unless the court's appraisal is exactly $.90, there would need to be some computation of interest.[7]

The defendants also oppose the plaintiff's proposed remedy because, they say, it would reward the plaintiff's delay in filing this action. They argue that, if the plaintiff had brought his action when he first learned of his claim, the court could have remedied the breach by requiring a fully-conforming disclosure and an actual statutory appraisal. The defendants argue that the plaintiff should not be entitled to a vastly better remedy simply because time has passed and the re-creation of an actual appraisal remedy is no longer practicable.

In response, the plaintiff urges the court to focus on the breach by the defendants,

---

7. The intricacies of awarding interest were not detailed in the defendants' plan, but the court assumes that an award of interest would be similar to interest awarded under the appraisal statute. In these circumstances, interest would necessarily be split into two parts: first, interest on the $.28 per share would be only from the time it was escrowed with the Register and, second, interest on any monies over $.28 per share would be from the time of the merger.

not on the potential effect on the minority stockholders. He urges the court to fashion a remedy that punishes the defendants because they are wrongdoers. He claims that quasi-appraisal is not to compensate the minority stockholders, but to remove the profit from the fiduciary that breached. Therefore, he argues, he (and all others who were cashed-out) should be able to retain the full merger price while simultaneously seeking a higher share price.

## C. Class Certification

In addition to the dispute over the quasi-appraisal remedy, the parties disagree about class certification. The plaintiff argues that he has satisfied the class certification requirements of Chancery Court Rule 23 and that he will fairly and adequately represent the class. He requests that the court designate all minority stockholders on the date of the short-form merger, April 24, 2003, as members of the class and that he be appointed class representative. The defendants respond that class certification is premature because they have not taken discovery of the plaintiff. In the alternative, they argue that the plaintiff claims to have not received the short-form merger notice, thereby making him not representative of the class who were harmed by the disclosure breach.

### III.

## A. Statutory Right Of Appraisal

■■■ Pursuant to 8 *Del. C.* § 253, Delaware's short-form merger statute, a majority stockholder who owns at least 90% of a company's shares can eliminate the minority stockholders "without notice, vote, or other traditional indicia of procedural fairness."[8] Absent fraud or illegality, the exclusive remedy of a minority stockholder is appraisal.[9] In an appraisal action, minority stockholders are entitled to the *pro rata* fair value of their shares as of the merger date.[10] However, "the right to an appraisal is a narrow statutory right,"[11] and dissenting stockholders must comply strictly with section 262 in making their demand.[12]

■■■ Both parties agree that statutory appraisal is now impractical for two reasons. First, formalistically, the minority stockholders no longer own shares in Next Level. All Next Level shares have been cancelled. Without the shares, the minority stockholders cannot make the demand required by the appraisal statute. Second, from a practical standpoint, the two-year delay makes it impossible to re-create the factual context necessary to have statutory appraisal. In *Gilliland*, the court noted that a more timely complaint may have allowed for a remedy based on re-disclosure *before* the minority stockholders received payment for their shares.[13] Moreover, any stockholder who might have demanded appraisal has had the use of the merger price for two years, contrary to the statutory requirement that a stockholder retain ownership of the

**8.** *Glassman v. Unocal Exploration Corp.*, 777 A.2d 242, 243 (Del.2001).

**9.** *Id.* at 248.

**10.** *Gray v. Cytokine Pharmasciences, Inc.*, 2002 WL 853549, at *6 (Del.Ch. Apr. 25, 2002).

**11.** *Applebaum v. Avaya, Inc.*, 812 A.2d 880, 893 (Del.2002).

**12.** *Nelson v. Frank E. Best, Inc.*, 768 A.2d 473, 479 (Del.Ch.2000).

**13.** 859 A.2d at 89 n. 29 ("Had the action been filed in May 2003, it is likely that the court would have ordered the dissemination of a new notice and accorded the stockholders a complete right to seek appraisal.").

shares throughout an appraisal. Therefore, the court must look beyond the statute to fashion a proper remedy.

## B. *Quasi–Appraisal*

For persons who may have been wrongfully deprived, even indirectly, of the statutory remedy of appraisal, the Delaware courts have created the doctrine of quasi-appraisal. Quasi-appraisal originated in the seminal *Weinberger* opinion as a non-statutory remedy for minority stockholders who, by tendering their shares on a materially uninformed basis, were prevented from seeking appraisal.[14] The doctrine was later expanded to include situations in which minority stockholders may have been prevented from demanding appraisal due to a failure to comply fully with the notice provisions of the appraisal statute itself.[15]

The *Nebel* case is perhaps most pertinent to the present situation because it also concerns a breach in connection with the notice provisions of the appraisal statute.[16] In *Nebel*, the 91.68% majority stockholder acquired the remaining shares of the target pursuant to section 253. The plaintiff challenged numerous aspects of the transaction, including the fundamental fairness of the terms on which the minority shares were eliminated. The court initially concluded that these issues could be addressed in the context of a parallel appraisal action. Nevertheless, the court sustained the class action complaint due to the defendants' failure to comply with the

explicit statutory requirement that the notice of merger include a copy of the Delaware appraisal statute. The *Nebel* court found that inadvertent substitution of a page from another state's appraisal statute was material because the legislature commanded the inclusion of the Delaware statute by use of the word "shall" in the statute.[17]

In addressing the issue of remedy, the *Nebel* court first determined that the plaintiffs would not be entitled to pursue a claim for rescission or rescissory damages. This was so even though the complaint alleged facts showing that the investment banker hired by the majority stockholder to opine on the fairness of the merger price used a manifestly improper valuation methodology that undervalued the shares by more than 8%. The court then concluded that the plaintiffs were entitled only to a "quasi-appraisal" remedy, in which the improper valuation methodology would be disregarded and the plaintiffs could be awarded their proportionate share of the statutory fair value of the target company.[18] The court did not consider whether the technical breach alleged alone justified the certification of a class of all persons whose shares were cashed-out in the merger.

■ The instant case bears a clear facial resemblance to *Nebel* since the merger notices in both cases were technically deficient. Moreover, as was true in *Nebel* of the mistaken page substitution, the omis-

---

**14.** *Weinberger v. UOP, Inc.,* 457 A.2d 701 (Del. 1983).

**15.** *Nebel v. Southwest Bancorp, Inc.,* 1995 WL 405750, at *7 (Del.Ch. July 5, 1995) (granting the remedy of quasi-appraisal to minority stockholders who did not receive proper notice of their right to seek statutory appraisal).

**16.** *See Gilliland,* 859 A.2d 80; *Nebel,* 1995 WL 405750.

**17.** 8 *Del. C.* § 262(d)(1) ("[T]he corporation ... shall include in such notice a copy of this section.").

**18.** *See Le Beau v. M.G. Bancorporation, Inc.,* 1998 WL 44993, at *12 (Del.Ch. Jan. 29, 1998).

sion of summary financial information from the Next Level notice was presumably material to some minority stockholders, notwithstanding the ready availability of full or correct information from other sources. In light of these similarities, the court agrees with the plaintiff that some form of quasi-appraisal remedy is appropriate.

Motorola and Next Level do not resist this conclusion, but they do raise a series of questions about the form and scope of such an action that are not addressed in *Nebel*. *Nebel* appears to assume, without deciding, that all minority stockholders should be entitled to participate in the quasi-appraisal class without having to "opt-in" or choose to participate, as would be true of a real appraisal action. It is possible that this aspect of the *Nebel* decision was driven by the allegations of gross unfairness and the "manifestly" improper valuation methodology employed by the majority stockholder.[19] Indeed, the *Nebel* quasi-appraisal was eventually resolved by an award that more than doubled the amount paid in the merger. This result transpired after the parallel appraisal action concluded that the shares at issue, for which the majority stockholder offered to pay $41, were worth $85 as of the effective date of the merger.[20] Because *Nebel* does not address these issues, the court will turn its attention to those issues now.

## C. The Remedy

 The specific contours of a quasi-appraisal action are not clearly defined in Delaware law. The most that can be said

of quasi-appraisal is that it is a remedy for those minority stockholders who are wrongfully deprived of the full right to a statutory appraisal. Thus, this court will use its "broad discretion to tailor [a remedy] to suit the situation as it exists."[21] As Delaware has long recognized, "the Court of Chancery [has] the inherent powers of equity to adapt its relief to the particular rights and liabilities of each party."[22]

Since the complaint relates to the defendants' technical non-compliance with the appraisal statute, the court's analysis begins with that statute. There are three characteristics of the statute that are relevant for this purpose. First, the appraisal statute is an opt-in statute. Minority stockholders who seek appraisal must demand it, and only those minority stockholders that demand appraisal are entitled to receive the statutory fair value.[23] Other minority stockholders who take no action receive the merger price, regardless of the outcome of the appraisal action.

 Second, the appraisal statute contains certain risks for the minority stockholders. "Most significant, of course, is the fact that a stockholder who seeks appraisal must forego all of the transactional consideration and essentially place his investment in limbo until the appraisal action is resolved."[24] As a part of this risk, a minority stockholder faces the prospect of receiving less than the merger price in the appraisal action.[25] Additionally, a minority stockholder is subject to the surviving company's credit risk.

**19.** *Nebel,* 1995 WL 405750, at *4

**20.** *Le Beau,* 1998 WL 44993, at *1.

**21.** *Cantor Fitzgerald, L.P. v. Cantor,* 2001 WL 536911, at *3 (Del.Ch. May 11, 2001) (citations omitted).

**22.** *Hanby v. Wereschak,* 207 A.2d 369, 370 (Del.1965).

**23.** 8 *Del. C.* § 262.

**24.** *Turner v. Bernstein,* 776 A.2d 530, 547–48 (Del.Ch.2000).

**25.** *See, e.g., Union Ill.1995 Inv. L.P. v. Union Fin. Group, Ltd.,* 847 A.2d 340, 356 (Del.Ch. 2003) ("In this case, . . . the fair value standard operates to leave the . . . petitioners[ ] with less than they would have received had they accepted the Merger consideration."); *see also Aspen Advisors LLC v. United Artists Theatre Co.,* 861 A.2d 1251, 1262 (Del.2004)

Finally, the appraisal statute awards the minority stockholders fair value of their shares as of the merger date.[26] Both parties submit valuations and have the burden of proving them by a preponderance of the evidence.[27] "If neither party satisfies its burden, however, the court must then use its own independent judgment to determine fair value."[28]

Given this brief synopsis of the relevant characteristics of the appraisal statute, the court now turns to tailoring an appropriate remedy for this case.

### 1. Opt–In

The court finds that the appropriate remedy in this case is to require minority stockholders to make a choice to participate in the action, in order to replicate the situation they would have faced if they had received proper notice. Although Motorola's substantial disclosure during the first-step tender offer makes it unlikely that many minority stockholders were actually deprived of a full opportunity to demand appraisal, the court concludes that all minority stockholders cashed out through the short-form merger should have the opportunity to choose to participate in this action. In other words, no stockholder will be expected or required to show, or even to aver, that he or she would have demanded appraisal earlier if proper disclosure had been made.

The opt-in procedures to be followed, however, will not be as stringent as those under the statute. For example, the court will not require beneficial or "street name" owners to "demand" quasi-appraisal through their record holder. The court is concerned that, given the substantial passage of time since the merger, it would be difficult for stockholders to secure the cooperation of the former record holders or nominees needed to perfect demand in accordance with the statute. Instead, stockholders seeking to opt-in will need to provide only proof of beneficial ownership of the Next Level shares on the merger date.

### 2. Risk

The court also finds that this quasi-appraisal action should be structured to replicate a modicum of the risk that would inhere if this were an actual appraisal action, i.e. the risk that the court will appraise the Next Level at less than $1.18 per share and the dissenting stockholders will receive less than the merger consideration. This will be done by requiring those stockholders who choose to participate in the action to pay into escrow a portion of the merger consideration they have already received. The court's purposes for structuring the quasi-appraisal action to mimic, at least in small part, the risks of a statutory appraisal are to promote well-reasoned judgments by potential class members and to avoid awarding a "windfall" to those stockholders who made an informed decision in 2003 to take the cash rather than pursue their statutory appraisal remedy. The court expects that this procedural requirement will lead to the certification of a class of former minority stockholders more nearly aligned with the subset of those who objected to the merger consideration and require a quasi-appraisal remedy to make them whole.

Looking to the history of the transaction at issue, the court concludes that the es-

---

(discussing the "possibly higher (or possibly lower) 'fair value' award" in appraisal actions).

26. *Gray,* 2002 WL 853549, at *6.

27. *M.G. Bancorporation, Inc. v. Le Beau,* 737 A.2d 513, 520 (Del.1999).

28. *Taylor v. Am. Specialty Retailing Group, Inc.,* 2003 WL 21753752, at *2 (Del.Ch. July 25, 2003).

crowed amount should be $.14 per share. The court arrives at this amount by using Motorola's initial tender offer price of $1.04 as the benchmark. Motorola was unable to convince a majority of the minority stockholders to tender at that price, instead being forced to raise its offer to $1.18 to obtain the necessary level of tenders. The court is satisfied that $.14 per share is both large enough to generate careful decision making and small enough not to deter participation by those who would have demanded appraisal in 2003 if the notice of merger had contained adequate information. Thus, if the court appraises the shares at less than $1.18, the class will be exposed to a potential loss, but one limited to a maximum of $.14 per share.[29]

### 3. Quasi–Appraisal Valuation

■ Finally, the court determines that the quasi-appraisal valuation will be the fair value of the shares as of the merger date determined in accordance with the appraisal statute. Although quasi-appraisal is an equitable remedy and the court is not bound to follow the appraisal statute,[30] the court concludes that it is most appropriate to do so. Neither party suggested an alternative valuation process, even though there is case law that suggests the possibility of improving the statutory appraisal valuation method.[31] Therefore, after considering other potential equitable remedies, the court concludes that following the statutory appraisal process will best serve the interests of justice in this case.

### D. The Plaintiff's Remedy

■ The court recognizes that the efforts of the plaintiff and his counsel have already benefited Next Level's former minority stockholders by winning for them the opportunity to participate in the quasi-appraisal remedy described in this opinion.

---

29. The court rejects Motorola's suggestion that the escrowed amount should be $.28 per share, or the difference between the $1.18 and the $.90 Motorola has offered to set as a valuation floor. In doing so, the court recognizes that Motorola will be free to take a position in the valuation stage of this case that the Next Level shares were worth even less than $.90 per share at the time of the merger. Nevertheless, since Motorola was itself fully informed about Next Level's value at the time it initially offered $1.04 per share, the court is unwilling to increase the risk to participating stockholders to account for a possible value lower that the lowest price Motorola itself freely offered.

30. Weinberger, 457 A.2d at 714 ("While a plaintiff's monetary remedy ordinarily should be confined to the more liberalized appraisal proceeding herein established, we do not intend any limitation on the historic powers of the Chancellor to grant such other relief as the facts of a particular case may dictate.").

31. Several cases have discussed favorably a process in which the court would simply choose one valuation or the other instead of making its own determination, a process commonly referred to as "baseball arbitration." See Gonsalves v. Straight Arrow Publishers, Inc., 1996 WL 696936, at *1 (Del.Ch. Nov.27, 1996), rev'd, 701 A.2d 357 (Del.1997) (describing "a typical appraisal trial" as one in which "the dynamics of the judicial appraisal process tend to produce opinion evidence of absurdly differing values"); Wacht v. Continental Hosts, Ltd., 1994 WL 525222, at *4 (Del. Ch. Sept.16, 1994) ("When determining the fair value of a corporation, ideally the Court should be able to choose one expert's valuation and accept it without modification."); Cede & Co. v. Technicolor, Inc., 1990 WL 161084, at *8 n. 17 (Del.Ch. Oct.19, 1990), rev'd in part on other grounds, 634 A.2d 345 (Del.1993) ("If it is understood that the court will or is likely to accept the whole of one witnesses testimony or the other, incentives will be modified.... [T]he parties will have incentives to make their estimate of value appear most reasonable. This would tend to narrow the range of estimates, which would unquestionably be a benefit to the process.").

The court properly regards this as a substantial benefit, i.e. one for which an award of counsel fees to be paid by the surviving corporation is appropriate.[32]

Nevertheless, the court has considered and for the reasons already discussed, rejected the plaintiff's proposed remedy. The plaintiff would give the entire class of minority stockholders, many of whom doubtless had access to substantial disclosure relating to Next Level and were not injured by the deficiencies in the merger notice, a riskless upside opportunity. This solution distorts the traditional risk/reward tradeoff found in a statutory appraisal and puts Motorola in an inequitable position not justified by the facts in this case. Motorola's breach of the duty of disclosure is not alleged to have been willful or intentional. As this court stated in its earlier opinion, it was a novel question of law whether a company that met the express statutory requirements for appraisal could still breach its duty of disclosure to the stockholders. Despite the plaintiff's pleas to penalize the "wrongdoer," this court finds that to do so would be inequitable.[33] Therefore, the court rejects the plaintiff's proposed remedy as extreme and unwarranted under the circumstances.

### E. *Class Certification*

Given the court's decision to require opt-in on the part of the minority stockholders, any discussion regarding the certification of a class is premature. Currently there is no class to certify. If and when a class does come into existence, the plaintiff may then request certification.

### V.

The remedy of quasi-appraisal is hereby granted to the plaintiff and other minority stockholders who opt-in and return $.14 per share to the Register in Chancery. Fair value will be determined after a class has been established.

The court expects that an approved form of notice will be sent to stockholders no later than April 15, 2005. To that end, counsel are directed to confer over an appropriate form of notice and other procedures required to give effect to the rulings in this opinion. They are further directed to report the results of their efforts on or before March 23, 2005.

IT IS SO ORDERED.

---

**32.** Next Level and its shareholders, as a whole, are benefited by an order rectifying the corporation's failure to comply with section 262(d)(2) of the DGCL. It is appropriate, in the circumstances of this case, to look to the corporation as a source of payment of the attorneys' fees incurred in securing that benefit. *Cf. In re First Interstate Bancorp S'holder Litig.*, 756 A.2d 353, 357–58 (Del.Ch.1999) (stating that the "corporate benefit doctrine" of fee shifting may be relied on when some non-monetary but "valuable benefit is realized by the corporate enterprise or the stockholders as a group.").

**33.** The plaintiff cites no factually similar case to support his penalty position. He relies on *Thorpe by Castleman v. CERBCO, Inc.*, 676 A.2d 436, 445 (Del.1996), but, in that case,

the defendants breached the duty of loyalty by not making complete disclosure of a corporate opportunity. Their acts cannot be compared to the apparently unintentional acts of Motorola. Additionally, even if *Thorpe* applied to Motorola's acts, the plaintiff cannot explain why the defendants' quasi-appraisal remedy is unacceptable. *Thorpe* stands for the requirement "that a fiduciary not profit personally from his conduct, and that the beneficiary not be harmed by such conduct." *Id.* The plaintiff fails to explain how the defendants would profit from the proposed remedy simply because it contains an opt-in requirement and a payment into escrow of part of the merger price during the pendency of the litigation.