**Barbara BERGER, Plaintiff Below, Appellant,**

**v.**

**PUBCO CORPORATION and Robert H. Kanner, Defendants Below, Appellees.**

**No. 509, 2008.**

Supreme Court of Delaware.

Submitted: May 21, 2009.
Decided: July 9, 2009.

Ronald A. Brown, Jr., Esquire, Prickett, Jones & Elliott, P.A., Wilmington, Delaware, for Appellant.

Allen M. Terrell, Jr. (argued), Brock E. Czeschin and Meredith M. Stewart, Esquires, of Richards, Layton & Finger, Wilmington, Delaware, for Appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice.

The issue on this appeal is what remedy is appropriate in a "short form" merger under 8 *Del. C.* § 253, where the corporation's minority stockholders are involuntarily cashed out without being furnished the factual information material to an informed shareholder decision whether or not to seek appraisal. The Court of Chancery held that because the notice of merger did not disclose those material facts, the minority shareholders were entitled to a "quasi-appraisal" remedy, wherein those shareholders who elect appraisal must "opt in" to the proceeding and escrow a portion of the merger proceeds they received. We conclude that although the Court of Chancery correctly found that the majority stockholder had violated its disclosure duty, the court erred as a matter of law in prescribing this specific form of remedy.

Under *Glassman v. Unocal Exploration Corporation,*[1] the exclusive remedy for minority shareholders who challenge a short form merger is a statutory appraisal, provided that there is no fraud or illegality, and that all facts are disclosed that would enable the shareholders to decide whether to accept the merger price or seek appraisal. But where, as here, the material facts are not disclosed, the controlling stockholder forfeits the benefit of that limited review and exclusive remedy, and the minority shareholders become entitled to participate in a "quasi-appraisal" class action to recover the difference between "fair value" and the merger price without having to "opt in" to that proceeding or to escrow any merger proceeds that they received. Because the trial court declined to order that remedy, we must reverse.

## *FACTUAL AND PROCEDURAL BACKGROUND*

The facts pivotal to this appeal, all drawn from the Court of Chancery's Opinion deciding cross motions for summary judgment, are undisputed.[2] Pubco Corporation ("Pubco" or "the company") is a Delaware corporation whose common shares were not publicly traded. Over 90 percent of Pubco's shares were owned by defendant Robert H. Kanner, who was Pubco's president and sole director. The plaintiff, Barbara Berger, was a Pubco minority shareholder.

Sometime before October 12, 2007, Kanner decided that Pubco should "go private." As the owner of over 90% of Pubco's outstanding shares, Kanner was legally entitled to effect a "short form" merger under 8 *Del. C.* § 253. Because that short form procedure is available only to corporate controlling shareholders,[3] Kanner formed a wholly-owned shell subsidiary, Pubco Acquisition, Inc., and transferred his Pubco shares to that entity to effect the merger. In that merger, which took place on October 12, 2007, Pubco's minority stockholders received $20 cash per share.

Under the short form merger statute (8 *Del. C.* § 253), the only relevant corporate action required to effect a short term merger is for the board of directors of the parent corporation to adopt a resolution approving a certificate of merger, and to furnish the minority shareholders a notice advising that the merger has occurred and that they are entitled to seek an appraisal under 8 *Del. C.* § 262. Section 253 requires that the notice include a copy of the appraisal statute, and Delaware case law requires the parent company to disclose in the notice of merger all information material to shareholders deciding whether or not to seek appraisal.[4]

In November 2007, the plaintiff received a written notice (the "Notice") from Pubco, advising that Pubco's controlling shareholder had effected a short form merger and that the plaintiff and the other minority stockholders were being cashed out for $20 per share. The Notice explained that shareholder approval was not required for

1. 777 A.2d 242 (Del.2001) ("*Glassman*").

2. *Berger v. Pubco Corporation,* 2008 WL 2224107 (Del.Ch. May 30, 2008) ("Chancery Opinion").

3. The short form merger procedure authorized by 8 *Del. C.* § 253 is available only where "... at least 90% of the outstanding shares of each class of the stock of a corporation ... is owned by another corporation...."

4. *Glassman,* 777 A.2d at 248. *See also McMullin v. Beran,* 765 A.2d 910, 920 (Del. 2000) (minority shareholders must be able to make an informed decision whether to accept the tender offer price or seek an appraisal of their shares.).

the merger to become effective, and that the minority stockholders had the right to seek an appraisal. The Notice also disclosed some information about the nature of Pubco's business, the names of its officers and directors, the number of its shares and classes of stock, a description of related business transactions, and copies of Pubco's most recent interim and annual unaudited financial statements. The Notice also disclosed that Pubco's stock, although not publicly traded, was sporadically traded over-the-counter, and that in the twenty-two months preceding the merger there were thirty open market trades that ranged in price from $12.55 to $16.00 per share, at an average price of $13.32. Finally, the Notice provided telephone, fax and e-mail contact information where shareholders could request and obtain additional information.

In its summary judgment opinion, the Court of Chancery found that except for the financial statements, the disclosures in the Notice provided no significant detail. For example, the description of the Company comprised only five sentences, one of which vaguely stated that "[t]he Company owns other income producing assets." No disclosures relating to the company's plans or prospects were made, nor was there any meaningful discussion of Pubco's actual operations or disclosure of its finances by division or line of business. Rather, the unaudited financial statements lumped all of the company's operations together. The financial statements did indicate that Pubco held a sizeable amount of cash and securities, but did not explain how those assets were, or would be, utilized. Finally, the Notice contained no disclosure of how Kanner had determined the $20 per share merger price that he unilaterally had set.

As our law required, the company attached to the Notice a copy of the appraisal statute, but the copy attached was outdated and, therefore, incorrect. The appraisal statute had been updated by changes that became effective in August 2007—two months before the Notice was sent to shareholders—but the version attached to the Notice did not reflect those changes. Pubco never sent a corrected copy of the updated appraisal statute to its former minority stockholders.

On December 14, 2007, the plaintiff initiated this lawsuit as a class action on behalf of all Pubco minority stockholders, claiming that the class is entitled to receive the difference between the $20 per share paid to each class member and the fair value of his or her shares, irrespective of whether any class member demanded appraisal. Pubco and Kanner then moved to dismiss the complaint under Court of Chancery Rule 12(b)(6). The plaintiff responded to that motion, and simultaneously filed an opening brief in support of her counter-motion for summary judgment under Court of Chancery Rule 56. Thereafter, the defendants abandoned their motion to dismiss, and filed a cross-motion for summary judgment. Briefing on the cross-motions was completed on April 22, 2008, and the Court of Chancery handed down its Memorandum Opinion on May 30, 2008, granting the cross-motions in part and denying them in part. The rulings in that Opinion were embodied in a final order and judgment entered on July 18, 2008.

### *THE COURT OF CHANCERY OPINION*

In its Opinion, the Court of Chancery addressed two issues. They were: (1) whether the Notice contained material misstatements or omissions that constituted disclosure violations, and (2) if so, what was the appropriate remedy.

The court found two separate disclosure violations. The first, which was not contested, is that the wrong version of the

appraisal statute had been attached to the Notice. That violated "the Delaware appraisal statute [which] explicitly requires its inclusion in any notice of a merger giving rise to appraisal rights."[5] The second violation, which was disputed, was that the Notice did not disclose how Kanner set the $20 per share price. The defendants argued that that nondisclosure was not material, because Kanner could have used whatever valuation methodology he desired, including even "rolling the dice." Rejecting that argument, the trial court held:

> Defendants argue that it cannot be material, because ... in a short form merger the parent has no obligation to set a fair price and, therefore, has no obligation to explain how or why the price set is fair.... Because Kanner ... did not have to set a fair price and, therefore, could have used any method—no matter how absurd—to set the merger consideration[,] Defendants argue that disclosure of [Kanner's] methodology is unnecessary.
>
> Defendants' argument entirely misses the mark, however, because the issue is not about necessity—it is about materiality. In the context of Pubco, an unregistered company that made no public filings and whose Notice was relatively terse and short on details, the method by which Kanner set the merger consideration is a fact that is substantially likely to alter the total mix of information available to the minority stockholders. Where, as here, a minority shareholder needs to decide only whether to accept the merger consideration or to seek appraisal, the question is partially one of trust: can the minority shareholder trust that the price offered is good enough, or does it likely undervalue the Company so significantly that appraisal is a worthwhile endeavor? When faced with such a question, it would be material to know that the price offered was set by arbitrarily rolling dice. In a situation like Pubco's, where so little information is available about the Company, such a disclosure would significantly change the landscape with respect to the decision of whether or not to trust the price offered by the parent. This does not mean that Kanner should have provided picayune details about the process he used to set the price; it simply means he should have disclosed in a broad sense what the process was, assuming he followed a process at all and did not simply choose a number randomly.[6]

Having adjudicated these disclosure violations, the Court of Chancery next considered the question of remedy. The court reasoned that in a short form merger, rescissory remedies (*i.e.*, rescission or rescissory damages) are unavailable for disclosure violations, because under Section 253 a short form merger becomes effective before any disclosures to the minority stockholders are made. Instead, therefore, "minority shareholders have a statutory right to appraisal in a merger under section 253, so a proper remedy would preserve that right.... Such a remedy is a 'quasi-appraisal.'"[7] The issue flowing

5. Chancery Opinion, at *3, and n. 16 (quoting *Nebel v. Sw. Bancorp, Inc.*, 1995 WL 405750 (Del.Ch. July 5, 1995), at *6) ("any argument that [a technical violation of the appraisal statute] is 'immaterial' is foreclosed by the mandatory nature of the statutory requirement.... Where the legislature so commands but the command is not observed, the corporation cannot be heard to argue that its violation of the stature is not material.")

6. Chancery Opinion, at *3 (internal footnotes omitted).

7. *Id.* at *4 (internal footnotes omitted).

from that ruling, which the parties hotly disputed, was what the content of that quasi-appraisal remedy should be.

Each side advocated a different form of quasi-appraisal and relied upon one or both of two Court of Chancery decisions that involved disclosure violations in short form, cash-out mergers. The plaintiff relied upon *Nebel v. Southwest Bancorp., Inc.*,[8] a pre-*Glassman* decision. In *Nebel,* the court determined that the appropriate remedy for the adjudicated disclosure violation was that the minority shareholders should receive the difference between the merger consideration and the fair value of their shares, to be determined in a parallel appraisal proceeding in which the shareholders were not required to "opt in." The defendants advocated the quasi-appraisal remedy awarded in *Gilliland v. Motorola, Inc.*,[9] a post-*Glassman* decision where the court "attempted to mirror as best as possible the statutory appraisal remedy [,]"[10] by requiring the minority shareholders seeking that remedy to "opt in" and to escrow a portion of the merger consideration they received.[11]

In the instant case, the Court of Chancery concluded that the remedy should be modeled upon that previously awarded in *Gilliland:*

> The quasi-appraisal remedy fashioned in *Gilliland* attempted to mirror as best as possible the statutory appraisal remedy. Because I agree that *Nebel* does not directly address the issue of defining the contours of the quasi-appraisal remedy, and because I believe the *Gilliland* approach wisely follows the General Assembly's instructions by patterning itself after the statute, I conclude this case is governed by *Gilliland.*[12]

The Court directed the parties to submit "an order calling for a quasi-appraisal remedy based on the *Gilliland* decision," and that should require four things:

> First, Pubco must make supplemental disclosures to address the violations discussed above; namely, Pubco must disclose the method, if any, used by Kanner to set the merger consideration and must include a correct and current copy of the appraisal statute. Second, the order should "require minority stockholders to make a choice to participate in the action, in order to replicate the situation they would have faced if they had received proper notice." As in *Gilliland,* these "opt-in procedures ... will not be as stringent as those under the statute[, and] stockholders seeking to opt-in will need to provide only proof of beneficial ownership of the [Pubco] shares on the merger date." Third, "this quasi-appraisal action should be structured to replicate a modicum of the risk that would inhere if this were an actual appraisal action, *i.e.,* the risk that the Court will appraise [Pubco] at less than [$20] per share and the dissenting stockholders will receive less than the merger consideration.... Finally, the order should then call for a valuation of the Pubco shares as of the date of the merger using the method prescribed by the appraisal statute."[13]

These requirements were embodied in a final order and judgment entered by the

8. 1995 WL 405750 (Del.Ch. July 5, 1995).

9. 873 A.2d 305 (Del.Ch.2005).

10. Chancery Opinion, 2008 WL 2224107, at *5.

11. *Gilliland,* 873 A.2d at 313.

12. *Id.* (internal footnotes omitted).

13. *Id.* (quotation marks and brackets in original, internal footnotes omitted).

Court of Chancery on July 18, 2008, from which the plaintiff has timely appealed.

## *ANALYSIS*

### A. *The Claims, Issues, and Standard of Review*

Because the plaintiff challenges a short form cash-out merger under Section 253, the starting point for analysis is *Glassman*,[14] which holds that in a short-form merger there is no "entire fairness" review and that the exclusive remedy is a statutory appraisal. *Glassman* cautions, however, that those limited review and exclusive remedy protections are not absolute or unqualified. They are available only "absent fraud or illegality." Moreover, "[a]lthough fiduciaries are not required to establish entire fairness in a short-form merger, the duty of full disclosure remains.... Where the only choice for the minority stockholders is whether to accept the merger consideration or seek appraisal, they must be given all the factual information that is material to that decision." [15]

The question not reached, and therefore not addressed, by *Glassman* is: what consequence should flow where the fiduciary fails to observe its "duty of full disclosure"? That is the only issue before us and it is one of first impression.[16]

The Court of Chancery held that where minority shareholders who are cashed out in a short form merger are deprived of information material to deciding whether or not to seek appraisal, they are entitled to a "quasi-appraisal" remedy with the following features. First, the shareholders must be furnished the material information of which they were deprived. Second, the shareholders must then be afforded an opportunity to choose whether or not to participate in an action to determine the "fair value" of their shares. Third, shareholders who choose to participate must formally "opt in" to the proceeding and place into escrow a prescribed portion of the merger consideration that they received. Paraphrasing *Gilliland*, the Court of Chancery identified the purpose of the escrow requirement as to "replicate a modicum of the risk that would inhere" if the proceeding were an actual appraisal.[17]

On appeal, the plaintiff-appellant does not contest the supplemental disclosure requirement of the order awarding the quasi-appraisal remedy, only its opt in and escrow features. The appellant claims that as a matter of law, all minority shareholders should have been treated as members of a class entitled to seek the quasi-appraisal recovery, without being burdened by any precondition or requirement that they opt in or escrow any portion of the merger proceeds paid to them. That, the plaintiff contends, is the only proper

14. *Glassman v. Unocal Exploration Corp.*, 777 A.2d 242 (Del.2001).

15. *Id.* at 248.

16. The Court of Chancery expressly determined that Pubco's majority stockholder, Kanner, did not disclose those appraisal choice-related material facts to the minority shareholders. Because the defendants-appellees have not challenged that adjudicated disclosure violation on this appeal, it is established that the duty of full disclosure mandated by *Glassman* was violated, leaving for determination only the question of remedy.

17. Chancery Opinion, at *5. The risk being referred to is that " 'a stockholder who seeks appraisal must forego all of the transactional consideration and essentially place his investment in limbo until the appraisal action is resolved.' As part of this risk, a minority stockholder faces the prospect of receiving less than the merger price in the appraisal action." *Gilliland*, 873 A.2d at 312 (quoting *Turner v. Bernstein*, 776 A.2d 530, 547–48 (Del.Ch.2000)).

application of both *Glassman* and the short form merger statute, 8 *Del. C.* § 253.

The defendants-appellees, not surprisingly, take the opposite position. They contend that the adjudicated remedy, modeled after the Court of Chancery's earlier *Gilliland* decision, is the only outcome that properly implements the policies which underlie the Delaware appraisal statute and animate the rulings in *Glassman*.

■ Because the Court of Chancery has broad discretion to craft an appropriate remedy for a fiduciary violation,[18] the propriety of a court-ordered remedy is ordinarily reviewed for abuse of discretion. Here, however, the appellant claims that the disputed remedy was erroneous as a matter of law, because the trial court erred "in formulating or applying legal principles" and in granting summary judgment to the defendants.[19] A claim of that kind is one that we review *de novo*.[20]

**B. *Discussion***

(1) *The Remedial Alternatives*

To repeat, the issue presented here is: in a short form merger where the exclusive remedy is an appraisal, what is the consequence of the controlling stockholder's failure to disclose the facts material to an informed shareholder decision whether or not to elect that exclusive remedy? In the abstract, four possible alternatives present themselves, of which only two are advocated by either side. The remaining two alternatives are advocated by no party. We nonetheless identify and consider them, because to do otherwise would render our analysis truncated and incomplete.

The alternatives advocated by each side, respectively, are the two forms of "quasi-appraisal" remedy earlier described. The defendants argued, and the Court of Chancery agreed, that the appropriate remedy is the quasi-appraisal ordered in *Gilliland*. Under that remedial structure, fully informed minority shareholders who "opt in" and place into escrow a portion of the consideration they received may prosecute an action to recover the difference between adjudicated "fair value" and the merger consideration. The plaintiff advocated the second alternative form of "quasi-appraisal" remedy—a class action to recover the difference between "fair value" and the merger consideration, wherein the minority shareholders are automatically treated as members of the class with no obligation to opt in or to escrow any portion of the merger consideration. Under either structure, the only issue being litigated would be the appraised "fair value" of the corporation on the date of the merger, applying established corporate valuation principles.[21]

Of the remaining two remedial alternatives (those advocated by neither side), the first would be a "replicated appraisal" proceeding that would duplicate the precise sequence of events and requirements of the appraisal statute. Under the "replicated appraisal" approach, the minority shareholders would receive (in a supple-

18. *Shell Petroleum, Inc. v. Smith,* 606 A.2d 112, 117 (Del.1992); *Gilliland,* 873 A.2d at 312 (citing *Cantor Fitzgerald, L.P. v. Cantor,* 2001 WL 536911, at *3 (Del.Ch. May 11, 2001)).

19. *See, e.g., Arnold v. Soc'y for Sav. Bancorp, Inc.,* 650 A.2d 1270, 1276 (Del.1994); *Arnold v. Soc'y for Sav. Bancorp,* 678 A.2d 533, 535 (Del.1996).

20. *Arnold v. Soc'y for Sav. Bancorp, Inc.* 650 A.2d at 1276.

21. Neither side argued before the Court of Chancery, or contends before us, that the recovery in either form of quasi-appraisal should include rescissory damages.

mental disclosure) all information material to making an informed decision whether to elect appraisal. Shareholders who elect appraisal would then make a formal demand for appraisal and remit to the corporation their stock certificates and the entire merger consideration that they received. Thereafter, the corporation would have the opportunity, as contemplated by the appraisal statute, to attempt to reach a settlement with the appraisal claimants. Where no settlement is reached, a formal appraisal action could then be commenced by the dissenting shareholders or by the corporation.

Under the fourth alternative (also not advocated by either side), there would be no remedial appraisal proceeding at all. Rather, the consequence of the fiduciary's adjudicated failure to disclose material facts would be to render *Glassman* inapplicable. As a result, the remedy would be the same as in a "long form" cash out merger under 8 *Del. C.* § 251—a shareholder class action for breach of fiduciary duty, where the legality of the merger (and the liability of the controlling stockholder fiduciaries) are determined under the traditional "entire fairness" review standard.[22]

(2) *Selecting The Most Appropriate Alternative*

The four alternative possibilities having been identified, the question then becomes: which remedy is the most appropriate—the one ordered by the Court of Chancery or one of the three alternative forms? To decide that issue, we must first answer a predicate question: by what analytical standard do we determine which remedial alternative is optimal? We conclude that the optimal alternative would be the remedy that best effectuates the policies underlying the short form merger statute (Section 253), the appraisal statute (Section 262) and the *Glassman* decision, taking into account considerations of practicality of implementation and fairness to the litigants. A reasoned application of that standard permits the remedial alternatives to be ranked in an objective and transparent way.

Applying that standard leads us to conclude that the fourth alternative would merit the lowest priority. Under that alternative, a violation of the disclosure requirement would render *Glassman* inapplicable and deprive the majority stockholder fiduciary of the benefit of *Glassman* 's limited review and exclusive remedy. In that setting (to reiterate), the minority shareholders would be entitled to the same remedies as are available in a fiduciary duty class action challenging a long form merger.

The strongest argument favoring this approach would run as follows: under *Glassman,* full disclosure of all material facts is a necessary condition for the fiduciary to enjoy *Glassman's* limited review and exclusive appraisal remedy. Therefore, a violation of that disclosure condition should deprive the fiduciary of those benefits. That argument, although unassailable in terms of logic and equity,[23] is flawed

22. *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983).

23. More specifically, one could argue that *Glassman's* interpretation of Section 253 (reflecting a legislative intent to limit the judicial remedy in short form mergers to a statutory appraisal) is expressly made subject to the fiduciary limitation that the majority stockholder fiduciary must disclose to the minority shareholders all material facts that would enable them to decide whether to choose that exclusive remedy. The logic of that argument would run thusly: if the fiduciary fails to do equity (by making the required disclosure), then equity will deprive the fiduciary of the benefit of the limited and exclusive judicial remedy, and subject the fiduciary to the full

in one highly important respect. To accept it would disregard the intent of the General Assembly, as described in *Glassman* and *Stauffer v. Standard Brands, Incorporated,*[24] that in a legally valid, nonfraudulent, short form merger the minority shareholders' remedy should be limited to an appraisal. Moreover, validating such an approach would disserve the purpose of *Glassman* 's disclosure requirement, which is to enable the minority stockholders to make an informed decision whether or not to seek an appraisal. A remedy that sidesteps appraisal altogether would frustrate that purpose.

Unlike this approach, the remaining three alternative remedies would give effect (albeit in varying degrees) to that legislative intent. Therefore, in the hierarchy those alternative remedies should rank above the one that abjures appraisal.

That observation brings into focus a second alternative—the "replicated appraisal" remedy that would duplicate precisely the sequence of events and requirements of the appraisal statute. Under that approach, the minority shareholders would receive a supplemental disclosure, to enable them to make an informed decision whether or not to elect an appraisal. Shareholders who elect that remedy must then make a formal demand for an appraisal, and then remit to the corporation their stock certificates and all the merger consideration they received.

This approach would place the minority shareholders in the situation they would find themselves had they received proper disclosure to begin with. The strongest argument favoring this alternative is that it would give maximum effect to the legislative intent recognized in *Glassman.* The flaw of this approach, however, is that it would effectuate that legislative intent at an unacceptable cost measured in terms of practicality of application and fairness to the minority. In *Gilliland,* the Court of Chancery so recognized, implicitly acknowledging the impracticality of such an approach by refusing to order a "replicated appraisal" remedy:

> The opt-in procedures to be followed, however, will not be as stringent as those under the statute. For example, the court will not require beneficial or "street name" owners to "demand" quasi-appraisal through their record holder. The court is concerned that, given the substantial passage of time since the merger, it would be difficult for stockholders to secure the cooperation of the former record holders or nominees needed to perfect demand in accordance with the statute. Instead, stockholders seeking to opt-in will need to provide only proof of beneficial ownership of [their] shares on the merger date.[25]

The *Gilliland* court also recognized (again, implicitly) that it would be unfair to require shareholders who desire an appraisal to remit the entire merger consideration they received *to the corporation,* as would occur in a replicated appraisal. Instead, the court required only that "those stockholders who choose to participate in the action to pay *into escrow a portion* of the merger consideration they have already received."[26] The *Gilliland* court thereby acknowledged the unfairness of requiring the minority stockholders to bear the risk of the corporation's creditworthiness, which would result from their

range of remedies otherwise available to shareholders that were cashed out in a going private merger.

**24.** 187 A.2d 78 (Del.1962).

**25.** 873 A.2d at 313.

**26.** *Id.* (italics added).

having to pay back a portion of the merger proceeds to the company. Instead, the court ordered that the proceeds be placed into an escrow account, with the escrowed funds representing only a portion of the merger consideration the minority actually received.

Implicit in the *Gilliland* remedy is the recognition that it is unfair to the minority shareholders, on whose behalf significant litigation expense and effort were successfully devoted, to limit their relief to requiring the fiduciary merely to fulfill the disclosure obligation it had all along. A remedy limited to awarding a second statutory appraisal would deny the minority any credit for that expense and effort, after having been forced to prosecute that litigation solely because the controlling shareholder had violated its fiduciary duty. A replicated appraisal remedy would also give controlling shareholders little incentive to observe their disclosure duty in future cases, since the cost of the remedy to the controllers would be negligible. Both in *Gilliland* and in this case the Court of Chancery eschewed that approach, concluding instead that the appropriate remedy should be a "quasi appraisal." Both parties agree with that conclusion, and so do we.

That requires us to choose between the two dueling forms of quasi-appraisal advocated by the parties on this appeal. Both forms would entitle the minority stockholders to supplemental disclosure enabling them to make an informed decision whether to participate in the lawsuit or to retain the merger proceeds. Both forms would entitle those who elect to participate to seek a recovery of the difference between the fair value of their shares and the merger consideration they received, without having to establish the controlling shareholders' personal liability for breach of fiduciary duty. The difference between the two quasi-appraisal approaches is that under the defendants' approach (which the Court of Chancery approved), the minority shareholders who elect to participate would be required to "opt in" and to escrow a prescribed portion of the merger proceeds they received. Under the plaintiff's approach, all minority stockholders would automatically become members of the class without being required to "opt in" or to escrow any portion of the merger proceeds.

As thus narrowed, the final issue may be stated as follows: under the standard we have applied, which remedy is the more appropriate—the one that imposes the opt in and partial escrow requirements or the one that does not? Considerations of utility and fairness impel us to conclude that the latter is the more appropriate remedy for the disclosure violation that occurred here. Because neither the opt-in nor the escrow requirement is mandated as a matter of law and because those requirements involve different equities,[27] we analyze each requirement separately.

27. The Court of Chancery imposed the opt in and escrow requirements because that was the relief ordered in *Gilliland*. The *Gilliland* court imposed those requirements not because they were required as a matter of law, but because the court viewed them as an appropriate exercise of equitable discretion. Only if the *Gilliland* court had ordered a remedy taking the form of a "replicated" appraisal would strict adherence to the letter of the appraisal statute have been required. In such a case, the minority shareholders would have to opt in by making the formal demand called for by the appraisal statute, and would have to return *all* of the merger proceeds they received *to the corporation*. In *Gilliland*, however, the court required only that the shareholders remit only a portion of the merger proceeds, and then only to an escrow fund, not the corporation. Clearly, the *Gilliland* court was attempting to craft a remedy that in some aspects resembled a statutory

We start with the "opt in" issue. The approach adopted by the Court of Chancery requires the minority shareholders to opt in to become members of the plaintiff class. The other choice would treat those shareholders automatically as members of the class—that is, as having already opted in. Those shareholders would continue as members of the class, unless and until individual members opt out after receiving the remedial supplemental disclosure and the Rule 23 notice of class action informing them of their opt out right.[28] From the minority's standpoint, the first alternative is potentially more burdensome than the second, because shareholders that fail either to opt in or to opt in within a prescribed time, forfeit the opportunity to seek an appraisal recovery. On the other hand, structuring the remedy as an "opt out" class action avoids that risk of forfeiture, and thus benefits the minority shareholders. To the corporation, however, neither alternative is more burdensome than the other. Under either alternative the company will know at a relatively early stage which shareholders are (and are not) members of the class.

Given these choices, it is self evident which alternative is optimal. As between an opt in requirement that would potentially burden shareholders desiring to seek an appraisal recovery but would impose no burden on the corporation, and an opt out requirement that would impose a lesser burden on the shareholders but again no burden on the corporation, the latter alternative is superior and is the remedy that the trial court should have ordered.

That leaves the requirement that the minority shareholders electing to participate in the quasi-appraisal must escrow a portion of the merger proceeds that they received. The rationale for this requirement, as stated in *Gilliland,* is "to mimic, at least in small part, the risks of a statutory appraisal ... to promote well-reasoned judgments by potential class members and to avoid awarding a 'windfall' to those shareholders who made an informed decision [after receiving the original notice of merger] to take the cash rather than pursue their statutory appraisal remedy." [29]

The defendants-appellees argue that it is fair and equitable to require the minority shareholders to escrow some portion of the merger proceeds. Otherwise (defendants say), the shareholders would have it both ways: they could retain the merger proceeds they received and at the same time litigate to recover a higher amount—a dual benefit they would not have in an actual appraisal. It is true that the minority shareholders would enjoy that "dual benefit." But, does that make it inequitable from the fiduciary's standpoint? We think not. No positive rule of law cited to us

appraisal, yet eliminated the aspects of appraisal that, in the court's view, would operate inequitably in this remedial setting. 873 A.2d at 311 ("Therefore, the court must look beyond the [appraisal] statute to fashion a proper remedy."). The critical point is that, in analyzing whether the opt in and escrow requirements imposed in *Gilliland* and this case are remedially appropriate, those requirements are not the subject of any preexisting legal mandate.

28. Court of Chancery Rule 23(c)(2) relevantly provides that:

In any class action maintained under paragraph (b)(3), the Court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that: (A) The Court will exclude a member from the class if the member so requests by a specified date....

29. *Gilliland,* 873 A.2d at 313.

requires replicating the burdens imposed in an actual statutory appraisal. Indeed, our law allows the minority to enjoy that dual benefit in the related setting of a class action challenging a long form merger on fiduciary duty grounds. In that setting the shareholder class members may retain the merger proceeds and simultaneously pursue the class action remedy. The defendants cite no case authority, nor are we aware of any, holding that that in the long form merger context that benefit is inequitable to the majority shareholder accused of breaching its fiduciary duty.

Lastly, fairness requires that the corporation be held to the same strict standard of compliance with the appraisal statute as the minority shareholders. Our case law is replete with examples where dissenting minority shareholders that failed to comply strictly with certain technical requirements of the appraisal statute, were held to have lost their entitlement to an appraisal,[30] and, consequently, lost the opportunity to recover the difference between the fair value of their shares and the merger price. These technical statutory violations were not curable, so that irrespective of the equities the unsuccessful appraisal claimant could not proceed anew. That result effectively allowed the corporation to retain the entire difference between fair value and the merger price attributable to the shares for which appraisal rights were lost. The appraisal statute should be construed even-handedly, not as a one-way street. Minority shareholders who fail to observe the appraisal statute's technical requirements risk forfeiting their statutory entitlement to recover the fair value of their shares. In fairness, majority stockholders that deprive their minority shareholders of material information should forfeit their statutory right to retain the merger proceeds payable to shareholders who, if fully informed, would have elected appraisal.[31]

In cases where the corporation does not comply with the disclosure requirement mandated by *Glassman*, the quasi-appraisal remedy that operates in the fairest and most balanced way and that best effectuates the legislative intent underlying Section 253, is the one that does not require the minority shareholders seeking a recovery of fair value to escrow a portion of the merger proceeds they received. We hold, for these reasons, that the quasi-appraisal remedy ordered by the Court of Chancery was legally erroneous in the circumstances presented here.

**30.** *See, e.g., Raab v. Villager Indus., Inc.*, 355 A.2d 888, 892–94 (Del.1976) (requiring strict compliance with the "demand for payment" and "timely delivery" requirements of the appraisal statute); *Tabbi v. Pollution Control Indus., Inc.*, 508 A.2d 867, 873 (Del.Ch.1986) (overruled on other grounds by *Enstar Corp. v. Senouf*, 535 A.2d 1351, 1357 n. 7 (Del. 1987)) (persons who were not record shareholders as of the merger date, even though they filed a timely demand for appraisal, held not entitled to appraisal); *Konfirst v. Willow CSN, Inc.*, 2006 WL 3803469, at *1 (Del.Ch. Dec.14, 2006) (holding that appraisal demands postmarked after the statutory deadline were time-barred, despite shareholders' claim that their receipt of a notice of merger was delayed because they moved or were on vacation). Our cases hold that although the requirements of the appraisal statute are to be liberally construed for the protection of objecting stockholders, that must be done within the boundaries of orderly corporate procedures and the purpose of the requirement. *Raab v. Villager Indus., Inc.*, 355 A.2d at 891 (citing *Salt Dome Oil Corp. v. Schenck*, 41 A.2d 583 (Del.Supr.1945); and *Carl M. Loeb, Rhoades & Co. v. Hilton Hotels Corp.*, 222 A.2d 789 (Del.1966)).

**31.** *Jackson v. Turnbull*, 1994 WL 174668, at *6 (Del.Ch. Feb.8, 1994) ("Our Supreme Court has emphasized the need for stockholders to strictly comply with the formalities of § 262 when seeking to exercise their appraisal rights. Corporations should be held to the same standard.") (internal citation omitted).

* * *

To summarize: where there is a breach of the duty of disclosure in a short form merger, the *Gilliland* approach does not appropriately balance the equities. If only a technical and non-prejudicial violation of 8 *Del. C.* § 253 had occurred, the result might be different. In some circumstances, for example, where stockholders receive an incomplete copy of the appraisal statute with their notice of merger, the *Gilliland* remedy might arguably be supportable. But the majority stockholder's duty of disclosure provides important protection for minority stockholders being cashed out in a short form merger. This protection—the quasi-appraisal remedy for a violation of that fiduciary disclosure obligation—should not be restricted by opt in or escrow requirements.

## *CONCLUSION*

For the foregoing reasons, the judgment of the Court of Chancery is reversed, and the case is remanded for proceedings consistent with this Opinion.