# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID ABRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-0865-BWD |
| | ) | |
| THE ESTATE OF W. ROCKWELL | ) | |
| WIRTZ, JAMES ENGLISH, WIRTZ | ) | |
| CORPORATION, CONSOLIDATED | ) | |
| ENTERPRISES, INC., FORMAN | ) | |
| REALTY COMPANY LLC, and | ) | |
| AMERICAN MART COMPANY LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION RESOLVING MOTION TO DISMISS

Date Submitted: November 6, 2025
Date Decided: December 15, 2025

Marcus E. Montejo, John G. Day, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, DE; *Attorneys for Plaintiff David Abraham.*

Lewis H. Lazarus, R. Eric Hacker, Bryan Townsend, MORRIS JAMES LLP, Wilmington, DE; OF COUNSEL: Rick A. Del Giudice, Christina E. Carriere Lutz, GOZDECKI, DEL GIUDICE, AMERICUS & BROCATO LLP, Chicago, IL; *Attorneys for Defendants the Estate of W. Rockwell Wirtz, James English, Wirtz Corporation, Consolidated Enterprises, Inc., Forman Realty Company LLC, and American Mart Company LLC.*

**DAVID, V.C.**

A stockholder plaintiff's shares were cashed out in a short-form merger pursuant to 6 *Del. C.* § 18-209(i), the limited liability company analog of 8 *Del. C.* § 253. After reviewing the notice disseminated in connection with the merger, the plaintiff attempted to demand appraisal but failed to perfect his rights under the statute. To revive his ability to pursue appraisal, the plaintiff now alleges that the disclosures contained in the merger notice failed to include information material to his decision of whether to seek appraisal. Having failed to perfect his appraisal rights, the plaintiff is not entitled to a quasi-appraisal remedy.

The plaintiff also alleges that Delaware law limiting remedies to appraisal in a short-form merger does not apply because the merger was statutorily invalid. The plaintiff claims the merger violated Section 18-209(i) in two ways. First, he argues that the merger certificate failed to certify that the merger was authorized "in accordance with" the statute and the acquirer's limited liability company agreement. The plaintiff's search for a technical foot fault in the precise wording of the merger certificate is unavailing. Second, he contends that the merger violated Section 18-209(i) because the acquirer did not actually own at least 90% of the acquired company's shares at the time of the merger. For reasons explained below, the plaintiff is entitled to targeted discovery into this theory.

1

## I.  BACKGROUND[1]

### A.  AM's Assets And Ownership Structure

Prior to November 2022, American Mart Corporation ("AM") was a Delaware corporation controlled by defendant Wirtz Corporation ("Wirtz"), a holding company for investments owned by the Wirtz family.  Am. Compl. ¶¶ 1, 6, 12.  At that time, AM owned (1) an indirect investment in Breakthru Beverage Group, LLC ("BBG"), a beverage wholesaler joint venture formed in 2016 with entities owned or controlled by members of the Wirtz family; and (2) a majority interest in 333 Building Corporation ("3BC"), which owns a historic commercial building in Chicago, Illinois.  *Id.* ¶¶ 14, 17, 24.

Wirtz controlled 84.37% of AM's common stock through Consolidated Enterprises, Inc., an entity that owned a 97% interest in Forman Realty Company LLC ("Forman Realty"), which in turn owned 84.37% of AM's common stock.  *Id.* ¶¶ 7, 13.  Wirtz also directly owned another 12.73% of AM's common

---

[1] The following facts are taken from Plaintiff's Amended Verified Complaint (the "Amended Complaint") and the documents incorporated by reference therein.  Am. Verified Compl. [hereinafter Am. Compl.], Dkt. 16; *see Allen v. Encore Energy P'rs*, 72 A.3d 93, 96 n.2 (Del. 2013) ("A judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint . . . ." (citing *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996))).

stock. *Id.* ¶ 13. Retail investors, including plaintiff David Abraham ("Plaintiff"), owned the remaining 2.55% of AM's common stock. *Id.*

### B. The Merger Certificate

In November 2022, Wirtz caused a newly created entity, American Mart Company LLC ("AM-LLC"), to acquire the minority interests in AM that Wirtz did not own through a reverse triangular merger (the "Merger") pursuant to 6 *Del. C.* § 18-209(i) ("Section 18-209(i)"). *See id.* ¶¶ 27–28. On November 21, AM-LLC's board of managers, "acting pursuant to the provisions of Section 18-404 of the Delaware Limited Liability Company Act, and pursuant to the Limited Liability Company Agreement of [AM-LLC]" (the "LLC Agreement"), executed a unanimous written consent (the "Board Consent") authorizing a plan of merger. *Id.* ¶ 28; *id.*, Ex. A at 11 [hereinafter Board Consent]. The Board Consent stated that AM-LLC "owns 262,546.5 shares of common stock issued by [AM]" representing "97.45% of the issued and outstanding shares of common stock in said corporation," and resolved that "[AM] shall hereby be merged with and into [AM-LLC]," with AM-LLC paying to AM's minority stockholders "cash equal to $357.00 per share of common stock." Board Consent at 2–3.

The same day, AM-LLC filed a Certificate of Ownership and Merger Merging American Mart Corporation With and Into American Mart Company LLC (the "Merger Certificate") with the Delaware Secretary of State. Am. Compl. ¶ 28; *id.*,

Ex. A at 10 [hereinafter Merger Certificate].  The Merger Certificate, "[p]ursuant to Section 18-209 of the Delaware Limited Liability Company Act . . . and the Limited Liability Company Agreement of [AM-LLC]," certified that AM-LLC "owns 262,546.5 shares of common stock issued by [AM], which holding constitutes ninety-seven and 45/100 percent (97.45%) of the outstanding shares of common stock of [AM], which is the only class of capital stock of [AM]."  Merger Certificate. The Merger Certificate attached a copy of the Board Consent.  *Id.*

### C.    The Notice

The next day, November 22, AM-LLC mailed a Notice to Stockholders of American Mart Corporation of Approval of Merger and Right to Dissent to AM's minority stockholders (the "Notice").  Am. Compl., Ex. A at 1 [hereinafter Notice]. With respect to appraisal rights, the Notice stated:

> Pursuant to Section 262 of the General Corporation Law of the State of Delaware (the "DGCL"), you are hereby notified that you have the right to seek an appraisal of your shares in connection with the Merger.  The procedures for seeking appraisal are set forth in Section 262 of the DGCL, a copy of which is attached as Exhibit B for your information. In order to seek appraisal rights, a stockholder must submit a written demand for appraisal of the stockholder's shares to [AM-LLC] within 20 days after the mailing of this Notice.  This Notice was mailed on the 22nd day of November 2022.  The written demand must reasonably inform [AM-LLC] of the identity of the stockholder and that the stockholder intends to demand the appraisal of such stockholder's shares.  For additional details regarding the appraisal rights procedures, please see the attached copy of Section 262.

*Id.* at 2.  The Notice also attached a copy of 8 *Del. C.* § 262 ("Section 262").  *Id.*

4

In seven additional, single-spaced pages, the Notice described the "History, Management, and Capitalization" of AM, representing that "[t]here have been no trades or transfers of shares in [AM] recorded . . . in the past year"; the "Operations and Financial Results" of AM, describing AM's assets and attaching a copy of its audited financial statements for the prior two years; and a "Valuation of Common Shares," summarizing the "asset approach," "income approach," and "market approach" valuations performed by AM's management and reviewed by AM-LLC's financial advisor, Management Planning, Inc. ("Management Planning"). *Id.* at 2–7.

### D.  Plaintiff Demands Appraisal.

On December 9, Plaintiff and four other stockholders delivered to AM-LLC letters demanding appraisal of their AM shares under Section 262. Am. Compl. ¶¶ 53, 55; *id.*, Ex. B [hereinafter Demand] at 1–10. Plaintiff's letter (the "Demand") stated:

> To Whom It May Concern:
>
> I am the beneficial owner of 247 shares of American Mart Corporation (the "Shares") and held the Shares throughout the month of November including on the effective date of the merger of American Mart Corporation into American Mart Company, LLC on November 21, 2022, as is evidenced in a copy of my brokerage statement attached hereto.
>
> I hereby demand an appraisal of the Shares pursuant to Section 262 of the Delaware General Corporation Law.

Sincerely,
David B. Abraham

Demand at 1. The Demand attached a brokerage statement evidencing Plaintiff's beneficial ownership of AM shares, as his shares were held by Cede & Co. in street name. Am. Compl. ¶¶ 55–56; Demand at 2.

On December 16, Plaintiff met with AM's Secretary and General Counsel, Wade Wacholz, to discuss the Demand. Am. Compl., Ex. C at 1. On January 3, 2023, Plaintiff sent Wacholz a letter "[t]hank[ing] [him] for taking the time to speak" and agreeing to "submit[] a proposal in writing for the board of [AM]'s consideration." *Id.* Plaintiff's letter stated:

> We have chosen to exercise our dissenter's rights and demand appraisal of our shares because given even the limited information provided in the Notice to Shareholders dated November 22, 2022, other information provided by [AM] in the Confidential Stockholder Disclosure Statement date[d] November 30, 2015, and analysis using publicly available information, it does not appear that the consideration offered to us reflects fair value for those shares.

> Our preliminary estimates indicate that the fair value of the shares ranges from $1,618 to $6,774/share, or 4.6x to 19.0x the $357/share offered in the Merger. The main difficulty we have in more precisely determining proper valuation is the lack of information provided regarding the financial performance of [BBG] as well as [3BC]. . . .

> However, even without information on the financial performance of American Mart's two largest holdings, the $357/share offered is substantially inadequate, based even on the limited information you have provided.

*Id.* Plaintiff's letter attached an information request as well as a "Summary Estimated Value" of AM's assets. *Id.* at 2–5.

On January 20, AM-LLC rejected the Demand because it failed to comply with Section 262 by "reasonably identify[ing] the record holder," "provid[ing] an address" at which Plaintiff could be contacted, and "provid[ing] certification of [the attached brokerage statement's] true and correct nature." Am. Compl. ¶¶ 60–64.

### E. Procedural History

On August 23—275 days after the effective date of the Merger—Plaintiff initiated this action through the filing of a Verified Complaint, alleging claims for violation of Section 18-209(i), breach of fiduciary duty, and unjust enrichment. Verified Compl. ¶¶ 70–105, Dkt. 1. On October 30, Plaintiff filed the operative Amended Complaint, adding a claim for aiding and abetting breach of fiduciary duty against AM-LLC. Am. Compl. ¶¶ 98–100.

Nearly eight months later, beginning June 14, 2024, the parties exchanged "informal discovery." Dkts. 18–19. Informal discovery continued until August, when the parties agreed that Defendants would respond to the Amended Complaint within sixty days. Dkt. 21. Thereafter, Defendants moved to dismiss the Amended

7

Complaint (the "Motion to Dismiss").[2]  The Court heard oral argument on the Motion to Dismiss on November 6, 2025.  Dkt. 44.

## II.    ANALYSIS

Defendants have moved to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim.  When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party. . . ."  *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

### A.    The Amended Complaint Fails To State A Claim For Breach Of The Duty Of Disclosure.

Under Delaware law, when a controlling stockholder owning at least 90% of a corporation's outstanding shares executes a short-form merger under 8 *Del. C.* § 253 ("Section 253") or its limited liability company analog Section 18-209(i), the controlling stockholder "does not have to establish entire fairness[.]"  *Glassman v.*

---

[2] Defs.' Mot. to Dismiss Pl.'s Am. Compl., Dkt. 27; *see* Defs.' Opening Br. in Supp. of their Mot. to Dismiss Pl.'s Am. Compl. [hereinafter DOB], Dkt. 28; Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss Pl.'s Am. Verified Compl. [hereinafter PAB], Dkt. 33; Defs.' Reply Br. in Further Supp. of their Mot. to Dismiss Pl.'s Am. Compl., Dkt. 36.

*Unocal Expl. Corp.*, 777 A.2d 242, 243 (Del. 2001). "[A]bsent fraud or illegality, the only recourse for a minority stockholder who is dissatisfied with the merger consideration is appraisal." *Id.*

The controlling stockholder still owes a "duty of full disclosure," however. *Id.* at 248. It must "notify the minority of the availability of appraisal rights and include a correct copy of the appraisal statute," and it must disclose "information material to the decision of whether or not to seek appraisal." *In re United Cap. Corp., S'holders Litig.*, 2017 WL 389520, at *3 (Del. Ch. Jan. 4, 2017) (quoting *In re Unocal Expl. Corp. S'holders Litig.*, 793 A.2d 329, 352 (Del. Ch. 2000), *aff'd sub nom. Glassman v. Unocal Expl. Corp.*, 777 A.2d 242 (Del. 2001)). "[S]ituations in which minority stockholders may have been prevented from demanding appraisal due to a failure to comply fully with the notice provisions of the appraisal statute itself" can support a "quasi-appraisal" remedy. *Gilliland v. Motorola, Inc.* (*Gilliland II*), 873 A.2d 305, 311 (Del. Ch. 2005). No other remedies are available to minority stockholders in a short-form merger.

In this case, Plaintiff attempted to demand appraisal after analyzing the information contained in the Notice, but he failed to perfect his rights under the statute. He now argues that the disclosures contained in the Notice failed to include information material to his decision of whether to seek appraisal. As explained below, those arguments lack merit.

9

**1. The Notice Appropriately Described The Minority Stockholders' Appraisal Rights.**

Section 262 requires that when stockholders are entitled to an appraisal remedy, the corporation must notify the stockholders of their appraisal rights. Section 262(d)(2) states that when appraisal is available under Section 253, the corporation

> shall notify each stockholder . . . that appraisal rights are available for any or all shares of such class or series of stock of such constituent, converting, transferring, domesticating or continuing corporation . . . and shall include in such notice either a copy of this section . . . or information directing the stockholders to a publicly available electronic resource at which this section . . . may be accessed without subscription or cost.

8 *Del. C.* § 262(d)(2). Section 262 requires strict compliance. *See Jackson v. Turnbull*, 1994 WL 174668, at *6 (Del. Ch. Feb. 8, 1994) ("Our Supreme Court has emphasized the need for stockholders to strictly comply with the formalities of § 262 when seeking to exercise their appraisal rights. Corporations should be held to the same standard." (citation omitted)). This Court has found disclosure violations where the corporation attached the wrong appraisal statute or inaccurately described the process for seeking appraisal under Delaware law. *See, e.g., Nebel v. Sw. Bancorp, Inc.*, 1995 WL 405750, at *6 (Del. Ch. July 5, 1995) (finding violation under Section 262 where the "statute attached to the Notice was taken from the appraisal statute of another state"); *see also Mehta v. Mobile Posse, Inc.*, 2019 WL 2025231, at *6 (Del. Ch. May 8, 2019) (finding violation under Section 262 where

10

the notice described the procedure for seeking appraisal under the Model Business Corporation Act instead of under Delaware law).

The Notice here complied with Section 262(d)(2) by notifying stockholders that appraisal rights were available and including a copy of Section 262. The Notice stated that stockholders had "the right to seek an appraisal of [their] shares in connection with the Merger" and that "[t]he procedures for seeking an appraisal are set forth in Section 262 of the DGCL, a copy of which is attached as Exhibit B for your information." Notice at 2. The Notice explained that "[i]n order to seek appraisal rights, a stockholder must submit a written demand for appraisal of the stockholder's shares to [AM-LLC] within 20 days after the mailing of this Notice[,]" and that "[t]he written demand must reasonably inform [AM-LLC] of the identity of the stockholder and that the stockholder intends to demand the appraisal of such stockholder's shares." *Id.* The Notice also noted that the full text of Section 262 included "additional details regarding the appraisal rights procedures" and attached an accurate copy of Section 262. *Id.*

Although the Notice notified minority stockholders of their appraisal rights and included an accurate copy of Section 262, Plaintiff asserts that the Notice described appraisal rights "in a confusing manner[.]" PAB at 55 (quoting *In re GGP, Inc. S'holder Litig.*, 282 A.3d 37, 44 (Del. 2022)). Section 262 defines a "stockholder" as a "holder of record of stock" and a "beneficial owner" as "a person

11

who is the beneficial owner of shares of stock held either in voting trust or by a nominee on behalf of such person[.]" 8 *Del. C.* § 262(a). According to Plaintiff, the Notice, while addressed to "Stockholders of American Mart Corporation" and disseminated to beneficial owners, failed to explain that for purposes of seeking appraisal, Section 262 defines a "stockholder" as a record holder and imposes additional procedural requirements on beneficial owners seeking appraisal— including requirements that the appraisal demand

> reasonably identifies the holder of record of the shares for which the demand is made, is accompanied by documentary evidence of such beneficial owner's beneficial ownership of stock and a statement that such documentary evidence is a true and correct copy of what it purports to be, and provides an address at which such beneficial owner consents to receive notices given by the surviving, resulting or converted entity hereunder and to be set forth on the verified list required by subsection (f) of this section.

PAB at 55; 8 *Del. C.* § 262(d)(3).

The Notice was not required to repeat in detail the procedure for a beneficial owner to seek appraisal as provided in Section 262, nor did the failure to include detailed instructions amount to a disclosure violation. Nothing in the Notice "contradict[ed] the statute." *Mehta*, 2019 WL 2025231, at *7. And Plaintiff identifies no authority suggesting that disclosures apprising stockholders of their appraisal rights must explain the difference between record and beneficial owners (a

12

distinction that Plaintiff appreciated[3]) and describe in detail procedures that are plainly set forth in the included text of the statute itself. Indeed, "duplication of this information in the Notice . . . would have been superfluous." *See Zirn v. VLI Corp. (Zirn II)*, 681 A.2d 1050, 1059 (Del. 1996).

Though neither side cited *Raab v. Villager Industries, Inc.*, 355 A.2d 888 (Del. 1976), in briefing, I feel compelled to note that this case also does not require a notice to reproduce step-by-step instructions that are clearly set forth in the appraisal statute. There, the Delaware Supreme Court, interpreting an earlier version of the appraisal statute, announced a rule that:

> A Delaware corporation, engaged in [Section] 262 proceedings, henceforth shall have an obligation to issue specific instructions to its stockholders as to the correct manner of executing and filing a valid objection or demand for payment under the Statute, as construed by Delaware courts, including: (1) the general rule that all such papers should be executed by or for the stockholder of record, fully and correctly, as named in the notice to the stockholder; and (2) the manner in which one may purport to act for a stockholder of record, such as a joint owner, a partnership, a corporation, a trustee, or a guardian.

*Raab*, 355 A.2d at 895. Where *Raab* addressed an older iteration of the appraisal statute that required all appraisal objections and demands to be submitted by the record holder, the appraisal statute itself now specifies procedures for a beneficial

---

[3] Plaintiff identified himself as a "beneficial owner" in his Demand. Demand at 1.

owner demanding appraisal. *Raab* "is good law"[4] insofar as it requires a notice to include accurate instructions for seeking appraisal, but it does not, in my view, require a notice to repeat every instruction included in the appraisal statute itself.

For the reasons explained above, the Amended Complaint fails to allege a viable disclosure claim concerning stockholders' appraisal rights.

## 2. Plaintiff Made A Demand For Appraisal But Failed To Perfect His Rights Under The Statute.

After receiving the Notice informing him of his right to seek appraisal, Plaintiff attempted to demand appraisal, but failed to perfect his rights by complying with Section 262.

"To perfect appraisal rights, stockholders must strictly comply with the requirements of Section 262." *GGP*, 282 A.3d at 56; *see also, e.g.*, *Firefighters' Pension Sys. of City of Kansas City v. Found. Bldg. Mat'ls, Inc.*, 318 A.3d 1105, 1176 (Del. Ch. 2024) ("The Delaware Supreme Court insists that corporations and stockholders comply strictly with the appraisal statute."); *Dirienzo v. Steel P'rs Hldgs. L.P.*, 2009 WL 4652944, at *3 (Del. Ch. Dec. 8, 2009) ("Delaware's appraisal statute enumerates specific requirements that a stockholder must strictly comply with to be legally entitled to an appraisal remedy.").

---

[4] *Mehta*, 2019 WL 2025231, at *11 n.87 ("*Raab* dealt with an older version of the appraisal statute but its directive regarding 'specific instructions' is good law, as shown by later decisions applying the same principle.").

14

Plaintiff delivered the Demand to the corporation on December 9, 2022, unequivocally stating: "I hereby demand an appraisal of the [s]hares pursuant to Section 262 of the Delaware General Corporation Law."[5] Demand at 1. However, the Demand failed to comply with Section 262(d)(3), which requires a beneficial owner seeking appraisal to make a "demand in writing" that

> reasonably identifies the holder of record of the shares for which the demand is made, is accompanied by documentary evidence of such beneficial owner's beneficial ownership of stock and a statement that such documentary evidence is a true and correct copy of what it purports to be, and provides an address at which such beneficial owner consents to receive notices given by the surviving, resulting or converted entity hereunder and to be set forth on the verified list required by subsection (f) of this section.

8 *Del. C.* § 262(d)(3). Plaintiff's Demand failed to identify the holder of record, state that the documentary evidence attached was a true and correct copy of what it purported to be, or provide an address at which Plaintiff consented to receive notices. Plaintiff claims that he made a "good faith" effort to comply with the statute, but Section 262 requires more than effort; it requires strict compliance.

---

[5] At oral argument, Plaintiff's counsel argued that the Demand did not, in fact, constitute a demand for appraisal. Tr. of 11-6-2025 Oral Argument on Defs.' Mot. to Dismiss Pl.'s Am. Compl. at 50:10–52:4, Dkt. 45. That argument contradicts the text of the Demand and Plaintiff's own briefing, which concedes that "[t]o preserve his right to appraisal, Plaintiff did what the Notice told him to do" by "hand deliver[ing] to [AM] a simple demand for appraisal of his shares." PAB at 16.

Plaintiff argues that AM-LLC "was reasonably informed of the identity" of the record holder because all shares not owned by Wirtz were held in street name by Cede & Co. PAB at 17. This Court has consistently found appraisal demands noncompliant "*even in instances where the identity of the record holder was known.*" *Dirienzo*, 2009 WL 4652944, at *3 (alteration in original). Additionally, Plaintiff offers no justification for the Demand's other shortcomings, including the failure to state that the documentary evidence attached was a true and correct copy of what it purported to be or provide an address at which Plaintiff consented to receive notices. Plaintiff therefore failed to perfect his appraisal rights under Section 262.

### 3. Having Failed To Perfect His Appraisal Rights, Plaintiff Is Not Entitled To A Quasi-Appraisal Remedy.

Having failed to perfect his appraisal rights under the statute, Plaintiff now seeks "quasi-appraisal" to remedy alleged deficiencies in the Notice. Quasi-appraisal is not an appropriate remedy where Plaintiff evaluated information in the Notice, concluded that the Merger consideration was insufficient, made a Demand for appraisal, but then failed to perfect his appraisal rights.

"Quasi-appraisal" is "a short-hand description of a measure of damages" that is "equivalent to what a stockholder would have received in an appraisal." *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 42 (Del. Ch. 2014). The term was adopted in *Weinberger v. UOP, Inc.* (*Weinberger I*), a case involving a long-form merger with a controlling stockholder conditioned on approval by a majority of the

16

minority shares. 457 A.2d 701 (Del. 1983). The Supreme Court held that where "[m]aterial information . . . was withheld under circumstances amounting to a breach of fiduciary duty," stockholders might be entitled to a damages remedy equal to an appraisal award. *Id.* at 703. Later, on remand, the Court of Chancery summarized the concept as follows:

> [T]he breach of fiduciary duty by [the controller] deprived the minority of a fair opportunity to vote down the proposed merger in the event that the owners of a majority of their voting shares, had they been provided with all material information, might have reached the collective conclusion that the proposed . . . merger price was inadequate.

*Weinberger v. UOP, Inc.* (*Weinberger II*), 1985 WL 11546, at *9 (Del. Ch. Jan. 30, 1985), *aff'd*, 497 A.2d 792 (Del. 1985) (TABLE).

The same logic does not neatly map onto a short-form merger, where stockholders are not entitled to "vote down" the merger. *Id.* A controlling stockholder effecting a short-form merger must ensure "that all facts are disclosed that would enable the shareholders to decide whether to accept the merger price or *seek appraisal*." *Berger v. Pubco Corp.* (*Berger II*), 976 A.2d 132, 134 (Del. 2009) (emphasis added).[6] Even if the controlling stockholder violates that duty, rescissory

---

[6] "Information is material if there is 'a substantial likelihood that the undisclosed information would significantly alter the total mix of information already provided.'" *United Cap.*, 2017 WL 389520, at *3 (quoting *Berger v. Pubco Corp.* (*Berger I*), 2008 WL 2224107, at *3 (Del. Ch. May 30, 2008), *rev'd on other grounds*, 976 A.2d 132 (Del. 2009)).

17

remedies are unavailable because the merger "was effective as a matter of law under [S]ection 253 before disclosures were even made." *Berger I*, 2008 WL 2224107, at *4. Instead, the proper remedy for a disclosure violation in a short-form merger preserves the only right the minority stockholders have—the decision to seek appraisal. *Id.*; *see also Gilliland II*, 873 A.2d at 311 (noting a quasi-appraisal remedy is appropriate where "minority stockholders may have been *prevented from demanding appraisal*" (emphasis added)).

In eight single-spaced pages and three appendices, the Notice here described AM's two primary assets (interests in BBG and 3BC); summarized three valuation methodologies used to calculate the merger consideration; showed adjustments made to AM's asset values to reach a net asset value (reflected on a "Net Equity chart"); and attached audited financial statements for a two-year period. Plaintiff's "preliminary estimates" based primarily on the Notice "indicate[d] that the fair value of the shares range[d] from $1,618 to $6,774/share," between 4.6 and 19 times more than the $357 per share price paid in the Merger. Am. Compl., Ex. C at 1. Plaintiff therefore "chose[] to exercise [his] dissenter's rights and demand appraisal of [his] shares because . . . it d[id] not appear that the consideration offered to [stockholders] reflect[ed] fair value for [AM] shares." *Id.* Plaintiff's ability to conduct a valuation and reach a conclusion undermines his position that the disclosures in the Notice were insufficient for deciding whether to seek appraisal.

18

What is more, Plaintiff cannot credibly assert that a purported lack of detail in the Notice prevented him from seeking appraisal when, based on the information available, Plaintiff *did* conclude that the Merger price was inadequate and *did* attempt to seek appraisal. If his Demand had complied with the form and manner requirements of Section 262, his remedy would be *appraisal*, not *quasi*-appraisal. *See In re Aristotle Corp.*, 2012 WL 70654, at \*3 (Del. Ch. Jan. 10, 2012) (finding petitioners could not pursue quasi-appraisal while they had an active appraisal petition because they "were not deprived personally of any right to dissent by any of the alleged disclosure inadequacies; they dissented based on what they knew already"); *Andra v. Blount*, 772 A.2d 183, 188 (Del. Ch. 2000) (holding that an appraisal plaintiff lacked standing to pursue a post-closing claim for breach of the duty of disclosure because the plaintiff "herself sought appraisal and did not suffer injury" from the allegedly inadequate disclosures that "induced stockholders to tender rather than to seek appraisal"). A lack of disclosure did not prevent Plaintiff from pursuing appraisal—his failure to perfect his appraisal rights under the statute did.

### 4. The Amended Complaint Fails To Plead A Viable Disclosure Theory.

For the sake of completeness, the Court evaluates Plaintiff's claims that the Notice failed to disclose material information concerning (a) the background of the

Merger, (b) projections and other financial information, (c) the value of 3BC, and (d) Management Planning's review. These arguments fail.

"An omitted fact is only material if there is a substantial likelihood that it would be considered important in a reasonable shareholder's deliberation and decision making process . . . ." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 199 (Del. Ch. 2007). "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* (quoting *Zirn v. VLI Corp.* (*Zirn I*), 621 A.2d 773, 779 (Del. 1993)).

In a long-form merger, fiduciaries must disclose all material facts "that bear on the decision of . . . whether or not to approve the [m]erger." *In re PNB Hldg. Co. S'holders Litig.*, 2006 WL 2403999, at *15 (Del. Ch. Aug. 18, 2006). "[T]he key issue for the stockholders is whether accepting the merger price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company." *Id.* In that circumstance, "stockholders must measure the relative attractiveness of retaining their shares versus receiving a cash payment, a calculus heavily dependent on the stockholders' assessment of the company's future cash flows." *Netsmart*, 924 A.2d at 200.

By contrast, in a short-form merger, "[w]here the only choice for the minority stockholders is whether to accept the merger consideration or seek appraisal,

20

[stockholders] must be given all the factual information that is material to *that* decision." *Berger II*, 976 A.2d at 138 (emphasis added) (quoting *Glassman*, 777 A.2d at 248). "[T]he short-form merger is 'an essentially summary procedure,' and . . . the notice of merger 'is primarily intended to notify the stockholders of action being taken by the parent corporation and to apprise the stockholders of their appraisal remedy.'" *Gilliland v. Motorola, Inc.* (*Gilliland I*), 859 A.2d 80, 87 (Del. Ch. 2004) (quoting *Zirn II*, 681 A.2d at 1059). The relevant question for the minority stockholders is this: "can [they] trust that the price offered is good enough, or does it likely undervalue the [c]ompany so significantly that appraisal is a worthwhile endeavor?" *Berger I*, 2008 WL 2224107, at *3.

### a. Reasons For And Background Of The Merger

Plaintiff argues that the Notice failed to disclose AM-LLC's reasons for, and details of the factual background leading to, the Merger. PAB at 45–46.

Because a stockholder that owns at least 90% of the corporation's shares is statutorily entitled to execute a merger, AM-LLC "was [not] required[] to provide a detailed explanation of [its] motivations behind the short-form [M]erger." *Zirn II*, 681 A.2d at 1060; *see also United Cap.*, 2017 WL 389520, at *5 (requiring disclosure only "in a broad sense what th[e] process was, *assuming* [*the parent*] *followed a process at all*") (emphasis added and omitted) (quoting *Berger I*, 2008 WL 2224107, at *3). The Notice disclosed that AM-LLC's board of managers

21

resolved to merge AM into AM-LLC; AM's management performed a valuation of AM's investments using three valuation methodologies; AM retained Management Planning to review the valuation, but not to render a fairness opinion; and then AM merged into AM-LLC. Notice at 1, 4–8. That disclosure was adequate, and Plaintiff fails to plead facts supporting an inference that the Notice omitted any information concerning the reasons for or background of the Merger,[7] let alone information material to a stockholder's decision of whether to seek appraisal.

### b. Projections And Other Financial Information

Plaintiff argues that the Notice failed to disclose various details underlying AM management's valuation analyses, including projections prepared by management for the period of December 31, 2022 through 2031, "assumptions and adjustments" made to its discounted cash flow model to arrive at projected after-tax cash flows, "projected growth rates," and "historical profit margins." *See* PAB at 47–50; Notice at 5.

Plaintiff fails to explain how additional financial information would have altered the total mix of information available to stockholders deciding whether to

---

[7] Plaintiff cites *Nagy v. Bistricer*, 770 A.2d 43, 54 (Del. Ch. 2000), for the proposition that merger disclosures must always include detailed reasons for a merger, but that decision, unlike the case at bar, addressed a long-form merger. PAB at 45; *Nagy*, 770 A.2d at 54 (distinguishing the Section 251 merger at issue from a "procedure-free merger" under Section 253).

seek appraisal. Plaintiff's strongest argument is that the Notice did not include management's financial projections. It is true that "reliable management projections . . . are of obvious materiality" when stockholders must decide if "accepting the merger price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company." *PNB*, 2006 WL 2403999, at *15. Our law recognizes that "managers ha[ve] meaningful insight into their firms' futures that the market d[oes] not." *Netsmart*, 924 A.2d at 203. But "in a short-form merger, the minority stockholders are not entitled to all facts material to their own valuation assessment." *United Cap.*, 2017 WL 389520, at *7. "The parent need not provide all the information necessary for the stockholder to reach an independent determination of fair value; only that information material to the decision of whether or not to seek appraisal is required." *Unocal Expl.*, 793 A.2d at 352.

Plaintiff cannot explain why more financial details were material for deciding whether to demand appraisal under the facts alleged here. Again, the Notice described AM's assets, summarized the valuation methodologies used to set the Merger price, identified adjustments to asset values in a Net Equity chart, and attached copies of AM's audited financial statements. The disclosures "g[a]ve[] a sense of whether the [Merger consideration] was arbitrarily 'picked out of a hat' or was based on some concrete evidence" of the company's value. *United Cap.*, 2017 WL 389520, at *5 (finding disclosures were adequate where the Notice "include[d]

23

relevant financial data to allow stockholders to determine whether the price 'was set by arbitrarily rolling [] dice'" (*quoting Berger I*, 2008 WL 2224107, at *3)).  That is sufficient.

Plaintiff cites *Erickson v. Centennial Beauregard Cellular, L.L.C.*, 2003 WL 1878583, at *7 (Del. Ch. Apr. 11, 2003), for the proposition that financial projections are always material in the context of a short-form merger.  PAB at 48.  In *Erickson*, however, "the only financial information provided to the stockholders was a one-and-a-half-page valuation based upon a single calculation of EBITDA over an unidentified period of time."  *United Cap.*, 2017 WL 389520, at *6 (distinguishing *Erickson*, 2003 WL 1878583, at *6).  "[T]he parent in that case had provided 'meager information' that 'was so devoid of substantive current and future data that it cannot . . . have encompassed management's view of the future of the company.'"  *Id.* (quoting *Erickson*, 2003 WL 1878583, at *7).  Here, AM has disclosed more, "including current, historical, and forward-looking information" reflected in audited financial statements and a Net Equity chart showing the value of AM's assets with management's adjustments.  *United Cap.*, 2017 WL 389520, at *6.  Plaintiff "fails to allege how projections . . . would be material" in light of those disclosures.  *See id.* (finding undisclosed projections were not material given the extent of financial information contained in the notice).

24

To reiterate, relying primarily on the Notice, Plaintiff was able to conduct a valuation in which he determined that the Merger price did not represent fair value for his shares. *See* Am. Compl., Ex. C. Plaintiff's allegations show that "the Notice's financial disclosures g[a]ve Plaintiff the minimum information necessary to determine whether he could 'trust that the price offered [wa]s good enough,' or whether the price undervalued [AM] 'so significantly that appraisal [wa]s a worthwhile endeavor.'" *United Cap.*, 2017 WL 389520, at *4 (quoting *Berger I*, 2008 WL 2224107, at *3). Plaintiff fails to convince me that disclosing more financial information would have altered the total mix of information available for deciding whether to seek appraisal.

### c. The Value Of 3BC

Plaintiff next alleges that the Notice failed to disclose material information about the value of 3BC, including information about 3BC's "rents," "other income," and "prospects." PAB at 51. Plaintiff concedes, however, that AM's audited financial statements included a statement of income. Moreover, the Notice disclosed that 3BC's value reflected a "considerable softening in the market for downtown office space following the Coronavirus pandemic and other factors." Notice at 4. Plaintiff fails to explain what else he believes should have been disclosed.

Plaintiff also argues that the Notice failed to specifically disclose that 3BC used a $52.5 million mortgage to partially fund a $75 million renovation. PAB at

51. The Notice valued AM's interest in 3BC "net of [its] mortgage debt" at negative $2.2 million. Notice at 4. Plaintiff does not allege that this figure is incorrect, and fails to explain how disclosing more detailed information about 3BC's mortgages (which Plaintiff discovered through a public title search) would alter the total mix of information available to stockholders determining whether to seek appraisal. *See Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000) (rejecting disclosure claim where the plaintiff failed to show that "the undisclosed information is inconsistent with, or otherwise significantly differs from, the disclosed information").

### d. Management Planning's Valuation Review

Finally, Plaintiff claims that although the Notice disclosed AM's engagement of Management Planning, it omitted material information by failing to disclose the "results" of Management Planning's review. PAB at 50–51 (citing *Erickson*, 2003 WL 1878583, at *7). As disclosed in the Notice,

> [t]he Board . . . (through counsel) . . . retained Management Planning, Inc. to perform a valuation review of the fair value of the Corporation's common stock. . . . In this matter their analysis included a review of the valuation methodologies applied by Management, the valuation procedures imparted in the Valuation Analysis, the accuracy of Management's computations, and preparation of sensitivity analyses to examine the impact on Management's evaluation. Management Planning, Inc. was not retained to and did not render a fairness opinion or provide investment advice.

Notice at 7.

26

The disclosure makes clear that Management Planning's role was limited to reviewing management's valuations (including its computations) and preparing sensitivity analyses, and did not include preparation of a fairness opinion. Plaintiff offers no factual support for the assumption that Management Planning's review generated results beyond the disclosures already reflected in the Notice. Nor did the Notice "encourage stockholders to rely" on Management Planning or "deceive[] [stockholders] into relying on [Management Planning] to protect their interests." *See Unocal Expl.*, 793 A.2d at 355. Plaintiff therefore fails to identify a material omission or misstatement concerning Management Planning's review.

\* \* \*

For the reasons explained above, Plaintiff is not entitled to a quasi-appraisal remedy.

### B. Plaintiff Is Entitled To Targeted Discovery Into One Alleged Statutory Violation.

Plaintiff next argues that the law limiting remedies arising from a short-form merger does not govern because the Merger was statutorily invalid. Plaintiff claims that Defendants violated Section 18-209(i) in two ways. First, Plaintiff argues that the Merger Certificate failed to comply with Section 18-209(i) because it did not certify that the Merger was authorized "in accordance with" the statute and the LLC Agreement. PAB at 22. That argument fails. Second, Plaintiff contends that the Merger violated Section 18-209(i) because AM-LLC did not own at least 90% of

27

AM's shares at the time of the Merger. *Id.* at 23–24. Plaintiff is entitled to targeted discovery into this theory.

### 1. The Merger Certificate Complied With Section 18-209(i).

Section 18-209(i) states, in part:

> If a domestic limited liability company is causing a merger under this subsection, the domestic limited liability company shall file a certificate of ownership and merger executed by 1 or more authorized persons on behalf of the domestic limited liability company in the office of the Secretary of State. The certificate of ownership and merger shall certify that such merger was authorized in accordance with the domestic limited liability company's limited liability company agreement and this chapter[.]

6 *Del. C.* § 18-209(i). Plaintiff argues that the Merger Certificate failed to comply with the statutory requirement to "certify that such merger was authorized in accordance with the domestic limited liability company's limited liability company agreement and this chapter[.]" *Id.*

The Merger Certificate stated that, "[p]ursuant to Section 18-209 of the Delaware Limited Liability Company Act . . . and the Limited Liability Company Agreement of [AM-LLC], [AM-LLC] . . . does hereby certify" that "[t]he Board of Managers of [AM-LLC], by resolutions duly adopted by unanimous written consent . . . determined to merge [AM] with and into [AM-LLC] pursuant to the Plan of Merger described therein." Merger Certificate. Although the Merger Certificate did not use the precise phrase "authorized in accordance with" from Section 18-209(i), it said, in sum and substance, that AM-LLC's board of managers approved the

28

Merger "pursuant to"—meaning "as authorized by"—the statute and the LLC Agreement. *Pursuant To*, Black's Law Dictionary (12th ed. 2024) (defining "pursuant to" to mean "[a]s authorized by; under"). Plaintiff's search for a technical foot fault in the precise wording of the Merger Certificate is unavailing.

> **2. The Amended Complaint Adequately Alleges That The Merger Conceivably Violated Section 18-209(i) Because AM-LLC Did Not Own Over 90% Of AM's Shares.**

Plaintiff also argues that the Merger violated Section 18-209(i) because AM-LLC did not own at least 90% of AM's outstanding shares at the time of the Merger.

Section 18-209(i), which parallels the language of Section 253, states:

> In any case in which (i) **at least 90% of the outstanding shares** of each class of the stock of a corporation or corporations (other than a corporation which has in its certificate of incorporation the provision required by § 251(g)(7)(A) and (B) of Title 8), of which class there are outstanding shares that, absent § 267(a) of Title 8, would be entitled to vote on such merger, **is owned by a domestic limited liability company**, (ii) 1 or more of such corporations is a corporation of the State of Delaware, and (iii) any corporation that is not a corporation of the State of Delaware is a corporation of any other state or the District of Columbia or another jurisdiction, the laws of which do not forbid such merger, the domestic limited liability company having such stock ownership may either merge the corporation or corporations into itself and assume all of its or their obligations, or merge itself, or itself and 1 or more of such corporations, into 1 of the other corporations, pursuant to a plan of merger.

6 *Del. C.* § 18-209(i) (emphasis added).

The Board Consent, Notice, and Merger Certificate each stated that AM-LLC owned 97.45% of AM's outstanding shares at the time of the Merger. As alleged in

29

the Amended Complaint, however, those statements were false. Prior to the Merger, Wirtz directly owned 12.73% of AM's common stock and controlled another 84.37% of AM's common stock through an indirect interest in Forman Realty. Am. Compl. ¶¶ 7, 13. The Notice disclosed that "[t]here [were] no trades or transfers of shares in [AM] recorded . . . in the past year." Notice at 3. Plaintiff asserts that in the absence of any transfer, AM-LLC could not have acquired Wirtz's and Forman Realty's shares prior to the Merger.

Defendants' response to this argument is, to my mind, somewhat surprising. Despite the procedural constraints of a motion to dismiss where the Court is bound to accept Plaintiff's factual allegations as pled, one might expect Defendants to respond that AM-LLC did, in fact, own the shares at the time of the Merger—particularly where, as here, the parties have exchanged preliminary discovery. Instead, Defendants argue that Plaintiff's ownership theory fails as a matter of law because "Section 18-209(i) does not specify" whether the owner of at least 90% of the shares must be a record or beneficial owner. DOB at 16. That argument is confounding because nothing in the papers before the Court suggests that AM-LLC, even if not a record holder, was a "beneficial owner" of shares held by Wirtz and Forman Realty. Rather, Defendants seem to say that even if AM-LLC did not itself own at least 90% of AM's shares at the time of the Merger, it was entitled to effectuate a short-form merger because it was affiliated with two other entities whose

30

shareholdings totaled more than 90% of the company's outstanding stock. *See* DOB at 17. The text of the statute does not support that interpretation.

Accepting the truth of the well-pled allegations in the Amended Complaint, as I must, I conclude that Plaintiff has stated a claim for violation of Section 18-209(i). The parties may take targeted discovery into AM-LLC's share ownership at the time of the Merger.[8]

## C. Aiding And Abetting And Unjust Enrichment Claims

Count III of the Amended Complaint alleges that AM-LLC aided and abetted breaches of fiduciary duty. Am. Compl. ¶¶ 98–100. "[A] claim for aiding and abetting a breach of fiduciary duty cannot survive if the underlying fiduciary duty claims do not." *See, e.g.*, *In re Hennessy Cap. Acq. Corp. IV S'holder Litig.*, 318 A.3d 306, 329 (Del. Ch. 2024) (quoting *City of Miami Gen. Empls. v. Comstock*, 2016 WL 4464156, at *23 (Del. Ch. Aug. 24, 2016), *aff'd*, 158 A.3d 885 (Del. 2017)). To the extent Plaintiff's aiding and abetting claim is predicated on an alleged breach of the duty of disclosure, it is dismissed for the reasons explained above. *See supra* Section II.A.

---

[8] If AM-LLC did own at least 90% of AM's shares at the time of the Merger, it seems likely that this count could be resolved on summary judgment after targeted discovery. If AM-LLC did not own the shares, then a petition under Section 205 (or the limited liability company analog, Section 18-211) may be appropriate. 8 *Del. C.* § 205; 6 *Del. C.* § 18-211; *see In re Activision Blizzard, Inc.*, 2025 WL 1276988, at *1 (Del. Ch. May 2, 2025) (validating a merger under Section 205).

Count IV of the Amended Complaint alleges an alternative claim for unjust enrichment against AM-LLC. Am. Compl. ¶¶ 101–13. To state a claim for unjust enrichment, a plaintiff must allege "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, [and] (4) the absence of justification . . . ." *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 875 (Del. 2020) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)). To the extent Plaintiff alleges that AM-LLC has been unjustly enriched through disclosure violations or by "wrongfully refusing Plaintiff's appraisal demand," Am. Compl. ¶ 103, the claim fails for reasons explained above. *See supra* Section II.A.

The Amended Complaint also alleges that if AM "is worth more than the consideration paid in the Merger, [AM-LLC] has been unjustly enriched by its deceitful actions." Am. Compl. ¶ 112. If the Merger is valid, Plaintiff cannot pursue a claim for unjust enrichment because "the only recourse for a minority stockholder who is dissatisfied with the merger consideration is appraisal." *Glassman*, 777 A.2d at 243. To the extent the Amended Complaint alleges that AM-LLC was unjustly enriched by an "illegal Merger" that failed to comply with Section 18-209(i), the claim rises and falls with Count I for violation of Section 18-209(i). *See, e.g.*, *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 729 (Del. Ch. 2023) (noting that where an unjust enrichment claim "turn[ed], in large part, on the same allegations as the fiduciary duty claims," it "survive[d] along with the fiduciary duty claims").

## III.  CONCLUSION

For the reasons explained above, the Motion to Dismiss is granted in part and denied in part.